Juan Santiago Andino, conocido por Juan Santiago Prosper,
peticionario, *v.* Corte de Distrito de San Juan, Hon.
C. Llauger Díaz, Juez, demandada.

Núm. 1172.—*Sometido:* Abril 10, 1939. *Resuelto:* Abril 14, 1939.

*V. Gutiérrez Franquis,* abogado del peticionario; *R. A. Gómez,
Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo.

El Juez Presidente Señor Del Toro emitió la opinión del
tribunal.

El presente es un recurso de *certiorari* establecido por
Juan Santiago Andino en solicitud de que se declare nula la
sentencia dictada en su contra por la Corte de Distrito de
San Juan el diez de septiembre de 1936 y a virtud de la
cual se le condenó a tres años de presidio con trabajos for-
zados.

Expedido el auto, se celebró la vista del mismo el diez
de abril en curso con asistencia del peticionario por su abo-
gado y del fiscal de esta corte que se allanó al recurso.

Como los autos originales fueron elevados, transcribire-
mos textualmente lo que de ellos resulta en relación con el
pronunciamiento de la sentencia cuya nulidad se pide por

haberse dictado sin jurisdicción, cometiéndose un grave error de procedimiento al aceptar la declaración de culpabilidad del acusado sin haberle antes informado de su derecho a estar acompañado de abogado y sin investigar si la declaración constituía una renuncia inteligente de su dicho derecho constitucional y estatutario.

La causa lleva el número 2920 de la Corte de Distrito de San Juan. Se inició a virtud de acusación formulada por el fiscal del distrito imputando al peticionario la comisión de un delito de atentado a la vida. Señalado el diez de septiembre de 1936 para la lectura de la acusación, comparecieron El Pueblo por su fiscal y el acusado en persona y ocurrió lo que sigue:

"Juez. ¿Cómo se llama usted?

"Acusado. Juan Santiago, para servirle.

"¿No tiene otro apellido?

"No.

"¿No es Andino?

"Juan Santiago Prosper.

"Juez. Se enmienda la acusación en el sentido que diga así en lugar de Juan Santiago Andino.

"¿Qué edad tiene?

"Cincuenta años.

"¿Qué profesión?

"Carpintero.

"¿De dónde es vecino?

"De Santurce.

"¿Soltero o casado?

"Casado.

"¿Tiene familia?

"Sí, señor.

"¿Tiene hijos?

"Sí, señor.

"¿Cuántos hijos tiene?

"Dos hijos.

"¿Es ciudadano americano?

"Sí, señor.

"(En este momento fué leída por el señor Juez que preside la Corte, el acta de acusación.)

"¿Usted es culpable o inocente?

"Culpable.

"Usted tiró con intención . . .

"Yo tiré al bulto; me cayeron encima y yo tiré al bulto; no me dirigí a nadie. Me·hago culpable de que yo le tiré el tiro.

"¿Alguien le ha aconsejado a usted que se declare culpable?

"No, señor.

"¿Es voluntariamente que usted lo hace?

"Voluntariamente.

"¿Usted quiere que se dicte sentencia ahora?

"Como usted quiera.

"Esa es una cuestión para usted resolverla.

"Mire como estoy; lleno de golpes. A mí me cayeron encima; dentro de casa estaba yo y me cogieron el revólver dentro de casa.

"¿Qué usted dice? ¿Quiere que se le dicte sentencia ahora?

"Sí, señor.

"Antes de dictar sentencia la Corte le pregunta si tiene algún motivo o fundamento legal para que no se dicte sentencia en contra suya.

"Yo tiré el tiro y yo no me dirigí a nadie y del balcón de casa fué que disparé.

"Juez. En atención de que se declara culpable la Corte le condena a sufrir tres años de presidio con trabajo forzado.

"Hay otra acusación de portar armas, ¿qué alegación hace?

"Culpable.

"Juez. Un mes de cárcel."

El artículo 141 del Código de Enjuiciamiento Criminal, ed. 1935, concretando el derecho constitucional a estar representado por abogado que consagran las Enmiendas Quinta y Sexta de la Constitución y el artículo 2, párrafo 2 de nuestra Ley Orgánica, ordena que:

"Si compareciera el acusado a responder a la acusación sin abogado, deberá el tribunal hacerle presente su derecho a tener abogado defensor antes de leerse. el acta de acusación y preguntarle si desea la asistencia de letrado. Si contestare afirmativamente, y no estuviere en posición de emplearlo, el tribunal deberá nombrarle abogado defensor, de oficio."

La ley de marzo 9, 1905, que se copia después de dicho artículo en la indicada edición de 1935 del Código de Enjui-

ciamiento Criminal, no altera el deber general del tribunal de informar al acusado sobre su derecho a tener abogado defensor. Para mayor claridad la transcribiremos de igual modo. Dice:

"Cuando se traiga al acusado ante el tribunal con el fin de instruirle proceso por un cargo que envuelva pena capital o reclusión perpetua, si resultare que no tiene abogado y que la pobreza del acusado no le permita emplear defensor, el tribunal designará uno o más letrados en ejercicio para que defiendan gratuitamente al reo, concediendo a dichos letrados un período de tiempo razonable para prepararse para el juicio. En todos los demás casos, quedará a la discreción del tribunal, la designación de abogado."

Fijando el alcance del derecho constitucional de que se trata y aplicándolo, dijo la Corte Suprema de los Estados Unidos en el caso de *Johnson* v. *Zerbst,* 304 U. S. 458 por medio del Juez Black el 23 de mayo de 1938:

"Toda vez que la Enmienda Sexta concede a un acusado de delito el derecho constitucional a ser asistido por abogado, el cumplimiento de este mandato constitucional es un requisito jurisdiccional previo y esencial para que una Corte Federal tenga facultad para privar a un acusado de su vida o de su libertad. Cuando ese derecho ha sido debidamente renunciado, la asistencia de abogado deja de ser un elemento necesario de la jurisdicción de la corte para proceder hasta la convicción y sentencia. Sin embargo, si el acusado no está representado por abogado y no ha competente e inteligentemente renunciado su derecho constitucional, la Enmienda Sexta se opone como una barrera constitucional en contra de la validez de una convicción y sentencia que le prive de su vida o de su libertad. La jurisdicción de la corte al comenzar el juicio puede perderse 'en el curso de los procedimientos' por haber dejado de completar la corte—según lo requiere la Enmienda Sexta—proveyendo abogado para el acusado que está imposibilitado para obtenerlo, que no ha renunciado inteligentemente esta garantía constitucional y cuya vida o libertad están envueltas. Si este requisito de la Enmienda Sexta no es cumplido, la corte deja de tener jurisdicción para seguir el proceso. La sentencia de convicción dictada por una corte sin jurisdicción es nula, y el que hubiere sido encarcelado en virtud de ella puede obtener su libertad mediante hábeas corpus."

Y este propio tribunal en los casos de *Ex parte Hernández Laureano,* ante, pág. 416 y *El Pueblo* v. *Rosario Mata* y *El Pueblo* v. *Rodríguez Cordero,* decididos, respectivamente, en marzo 27 y 28 (*per curiam*), ha interpretado nuestros preceptos de ley sobre la materia a la luz de la doctrina del Supremo Nacional y ha declarado nulas sentencias dictadas sin haberse cumplido con los mismos.

Bastaría lo expuesto para concluir que el *certiorari* procede, ya que en momento alguno advirtió la Corte de Distrito de su derecho al acusado, pero hay aún más en este caso concreto. De las contestaciones del acusado se desprende que si bien declaró que había portado el arma y hecho el disparo, dijo que la portación lo fué en su casa y el disparo lo hizo porque "le cayeron encima", y bajo esas circunstancias no debió registrarse una declaración de culpabilidad. Esas mismas circunstancias ponen de relieve la necesidad del abogado, del experto en ley, que con conocimiento de los hechos está en condiciones de aducir en pro de su representado, en debida forma, las defensas que puedan existir en su favor.

*Debe, en tal virtud, anularse la sentencia dictada en la causa núm. 2920 condenando al peticionario como autor de un delito de atentado a la vida, y surgiendo además de los autos que se dictó otra sentencia en las mismas condiciones en la causa que contra dicho peticionario se siguiera por portar el arma con que hizo el disparo, debe también anularse esa otra sentencia, a fin de que la corte quede expedita para continuar actuando en ambas causas de acuerdo con la ley.*