FERNANDO RIVERA ESCUTÉ, peticionario, *v.* GERARDO DELGADO, ALCAIDE DE LA PENITENCIARÍA ESTATAL DE PUERTO RICO, demandado.

Número 808.

*Sometido:* 29 de julio de 1958. *Resuelto:* 16 de diciembre de 1958.

---

*Santos P. Amadeo, Francisco García Quiñones, Enrique Gonzá-
lez y Gilberto Concepción de Gracia, abogados del peti-
cionario; Hon. Secretario de Justicia Interino Francisco
Espinosa, Jr., Arturo Estrella, Secretario Auxiliar de Justi-
cia, y William Fred Santiago, Fiscal Auxiliar del Tribunal
Supremo, abogados del demandado.*

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opi-
nión del Tribunal.

La solicitud de hábeas corpus que radicó el peticionario
en 23 de junio de 1958 alega que la investigación del delito
por el cual se le juzgó y sentenció se hizo por el fiscal de
acuerdo con lo estatuído en el inciso 4 del art. 11 del Código
de Enjuiciamiento Criminal, el cual dispone que el interro-
gatorio de los testigos por el promotor fiscal se hará priva-
damente; que fue interrogado por el Fiscal José C. Aponte
sin haberle éste advertido del derecho constitucional a estar
asistido por abogado, y que no tuvo asistencia legal durante
dicho interrogatorio hecho en presencia de funcionarios de
la policía y de la detective. Que al ser interrogado él tenía
19 años de edad y había cursado hasta el cuarto grado de
escuela elemental; que la sentencia se debió exclusivamente
a la confesión que le fue extraída sin asistencia de abogado
y que sin dicha confesión no se le habría podido condenar
por ser insuficiente la otra prueba presentada en el juicio.
También, que su proceso y condena son nulos e ineficaces
en violación de las Enmiendas V y VI de la Constitución
de Estados Unidos y del párrafo segundo del art. 2 de la
Ley Orgánica de 1917 que le garantizaban el derecho cons-
titucional a la asistencia de abogado en todos los pasos del
procedimiento desde el momento en que fuera arrestado e
interrogado, y en violación de la cláusula del debido proce-
dimiento de ley de la Enmienda XIV al privársele de abo-
gado en la fase investigadora del proceso en la que se obtuvo
de él una confesión sin ayuda legal. Sostiene en apoyo de

su solicitud que de acuerdo con la decisión emitida por el Tribunal Supremo en el caso de *In re Groban*, 352 U.S. 330, 1 L. ed. 2d 376, un acusado por el fiscal tiene derecho, bajo la cláusula del debido procedimiento de ley a la asistencia de abogado antes y durante el interrogatorio del Ministerio Público "si dicho interrogatorio se hace bajo condiciones inquisitoriales como las autorizadas por el artículo 11, inciso 4 del Código de Enjuiciamiento Criminal."

Expedido el auto, señalamos una vista para el 15 de julio de 1958. Al comenzar la misma el peticionario sometió una enmienda a la solicitud, que fue permitida, alegando adicionalmente que al ser investigado e interrogado él tenía la edad mental de un niño de 8 años y estaba clasificado sicológicamente como "morón", de acuerdo con un examen que le fuera hecho por el profesor Alfredo Silva de la Universidad de Puerto Rico y según la declaración de dicho profesor en el juicio que le fue celebrado. Ofreció como única prueba el expediente de apelación del juicio de asesinato que se le siguió en la entonces Corte de Distrito de San Juan en el año 1944 que contiene la transcripción de la evidencia desfilada en el proceso. El fiscal no ofreció prueba pero se le concedió término para someter, lo que hizo, el certificado de nacimiento del peticionario. Del mismo surge que "Alejandro" Rivera "Escuter" nació en 10 de junio de 1922 y fue inscrito en el Registro Demográfico el 9 de junio de 1930. El fiscal unió al certificado una declaración jurada del alcaide de la Penitenciaría Estatal exponiendo que del expediente del peticionario aparece que fue inscrito con el nombre de Alejandro Rivera Escuté y que bajo el nombre de Julio Rivera Escuté estuvo recluído en la Escuela Industrial Reformatoria de Mayagüez en virtud de sentencia de la Corte Juvenil de San Juan de 13 de noviembre de 1935 que lo declaró convicto de escalamiento en segundo grado y ordenó su reclusión hasta que cumpliera la edad de 19 años, y que se le puso en libertad de la Escuela Reformatoria el 10 de junio de 1941 al cumplir dicha edad.

Los autos demuestran que el peticionario fue sentenciado por la anterior Corte de Distrito de San Juan el 28 de enero de 1944 a la pena de reclusión perpetua después de un veredicto que lo declaró culpable de asesinato en primer grado. Atacó en el tribunal sentenciador la validez de su confesión escrita y se opuso a la admisión de la misma en evidencia por el fundamento de que se le privó del derecho constitucional a asistencia de abogado durante la investigación o lo que él llamó "examen preliminar". El juez admitió la confesión basándose en que no existía disposición estatutaria que diera al acusado tal derecho en un "examen preliminar", y en que la investigación del fiscal aquí es privada. (T. E. caso de Asesinato, págs. 38, 76–77.) En apelación señaló como error separado el que se le privara del derecho a asistencia legal en esa etapa preliminar de los procedimientos.(¹) Resolviendo dicho planteamiento dijimos al confirmar la sentencia: (*Pueblo* v. *Rivera Escuté*, 66 D.P.R. 216, 220–221.)

"En su tercer señalamiento alega el apelante que la corte inferior erró al resolver que no se privó al acusado del derecho constitucional y estatutario de estar asistido por abogado en el examen preliminar. Descansa su contención en las disposiciones de los artículos 44, 11 y 141 del Código de Enjuiciamiento Criminal y en el artículo 2, inciso 2 de nuestra Carta Orgánica y la doctrina sentada en los casos de *Woods* v. *United States,* supra, *Powell* v. *Alabama,* 287 U.S. 45, *Johnson* v. *Zerbst,* 304 U.S. 458, *People* v. *Napthaly,* 105 Cal. 641, y otros. Repetiremos, para resolver la cuestión legal planteada, lo que dijimos en el caso de *Pueblo* v. *Travieso,* supra, que ni la Ley Orgánica ni nuestro Código de Enjuiciamiento Criminal contienen disposición alguna que requiera como requisito previo para la vali-

---

(¹) Otros señalamientos de errores al efecto de que el peticionario no había renunciado inteligentemente su derecho constitucional a no incriminarse porque según el testimonio del profesor Silva se trataba de un retardado mental de tipo "morón" que no comprendía el alcance de las advertencias que en ese sentido le hiciera el fiscal antes de recibir su confesión, y no sabía las consecuencias de la misma; de que la confesión fue conseguida mediante coacción física y moral, y de que sin ella la prueba era insuficiente para sostener una sentencia condenatoria, fueron considerados por este Tribunal y desestimados a la luz de la evidencia que tuvo ante sí la corte sentenciadora y el jurado.

dez de una acusación, que ésta sea radicada por el Fiscal después de haberse practicado un examen preliminar y librado orden de prisión por un magistrado o juez instructor, y a esto agregamos según fuera resuelto en el caso del *Pueblo* v. *Montes,* 64 D.P.R. 322, que en esta jurisdicción no existe requisito constitucional de que el acusado deba estar representado por abogado con anterioridad a la lectura de la acusación. Además, en la hipótesis de que nuestras leyes requiriesen para la validez de una acusación que se practicara previamente un examen preliminar, tal derecho del acusado ha quedado renunciado al haber dejado de presentar una moción antes o en el acto del *arraignment* para que se desestime la acusación por no haberse cumplido con tal requisito legal. *Pueblo* v. *Travieso,* supra; *Ex parte McConnell,* 83 Cal. 558 y *People* v. *Ronsse,* 26 Cal. App. 100, 146 Pac. 65."

Expedimos el auto convencidos de que la cuestión planteada ante nos no la resolvimos en la apelación en los términos constitucionales en que aquí se nos presenta, siendo una que, de asistir la razón al peticionario, podría resultar en la nulidad de los procedimientos y de la sentencia que tiene privado de su libertad a éste por falta del debido procedimiento de ley, o posiblemente por ausencia de jurisdicción.(²)

---

(²) En su memorándum en apoyo de que se expidiera el auto, el peticionario nos ·dice que había planteado en su apelación la cuestión constitucional que ahora nos señala y le fue decidida en contra por un tribunal cuyos miembros no están actualmente ejerciendo sus cargos, y que siendo así, la cuestión era ahora *"nueva"* para todos los miembros del tribunal, "que pueden tener un criterio contrario a los jueces que en 1946 declararon sin lugar la cuestión planteada en dicho caso." Como institución que encarna el poder judicial este Tribunal es uno e indivisible en todos los tiempos quienesquiera que sean sus jueces en un determinado momento. Sus sentencias dictadas con jurisdicción establecen estado permanente de derecho mientras no se revoquen o se modifiquen. Y entre las partes, constituyen la ley del caso. Del hecho de que expedimos el auto ante semejantes motivaciones no debe inferirse que está en el pensamiento del Tribunal el reabrir a discusión controversias ya adjudicadas entre las mismas partes como un sondeo del criterio que puedan tener sus incumbentes de hoy distinto a como pudieron pensar sus componentes de ayer. Ello no conduciría a una saludable norma en el descargo de la función judicial y tendería, cuando menos a restar a la jurisprudencia aquella condición de estabilidad tan útil a una sociedad que se rige por la ley según se la interpretan sus tribunales. Procedimos a reexaminar la cuestión porque la misma no ha sido antes resuelta a la luz de las garantías constitucionales.

Como puede observarse por lo anteriormente transcrito de la decisión de *Rivera Escuté*, la cuestión sobre su derecho a asistencia legal en la etapa en que fue interrogado y dio su confesión se resolvió a base de lo decidido en *Pueblo* v. *Travieso*, 60 D.P.R. 530 (1942) y en *Pueblo* v. *Montes*, 64 D.P.R. 321 (1944). Antes de estos casos, en los de *Ex parte Hernández Laureano*, 54 D.P.R. 416 (1939); *Ex parte Resto*, 55 D.P.R. 725 (1939); *Rodríguez* v. *Corte*, 59 D.P.R. 652 (1942) y en toda una serie de casos que siguieron al de *Hernández Laureano*,[3] habíamos establecido en forma incondicional y absoluta el derecho de un acusado a tener asistencia de abogado, so pena de la nulidad del proceso por falta de jurisdicción, en los procedimientos llevados a cabo ante el tribunal, la comparecencia para la lectura de la acusación inclusive, a menos que inteligente y conscientemente se hubiera renunciado a dicha asistencia. Con esas decisiones dimos una interpretación y alcance al párrafo segundo del art. 2 de la Ley Orgánica que nos regía— "(E)n todos los procesos criminales el acusado gozará del derecho de tener para su defensa la ayuda de abogado" —igual a la interpretación y alcance dados por el Tribunal Supremo Nacional a la parte pertinente de la Enmienda VI de la Constitución en *Johnson* v. *Zerbst*, 304 U.S. 458, 82 L.ed. 1461, en relación con las personas acusadas de delito ante las cortes federales.

En *Pueblo* v. *Montes*, supra, donde el acusado impugnó la admisión en evidencia de su declaración jurada ante el juez de paz por no haber estado asistido de abogado al momento

---

[3] *Santiago* v. *Corte*, 54 D.P.R. 607 (1939); *Pueblo* v. *Correa*, 54 D.P.R. 795 (1939); *Pueblo* v. *Mercado*, 54 D.P.R. 903 (1939); *Pueblo* v. *Santana*, 55 D.P.R. 239 (1939); *Ex parte Oropesa*, 55 D.P.R. 281 (1939); *Ex parte Rodríguez*, 55 D.P.R. 415 (1939); *Pueblo* v. *Ortiz*, 57 D.P.R. 469 (1940); *Pueblo* v. *Muriel*, 57 D.P.R. 914 (1941); *Dijols* v. *Lugo, Alcaide*, 58 D.P.R. 5 (1941); *Ex parte Casellas*, 58 D.P.R. 105 (1941); *Veguilla* v. *Saldaña*, 58 D.P.R. 878 (1941); *Jiménez* v. *Corte*, 59 D.P.R. 29 (1941); *Berríos* v. *Saldaña*, 59 D.P.R. 903 (1942) y 61 D.P.R. 583 (1943); *López* v. *Saldaña*, 60 D.P.R. 312 (1942).

En *Ruiz* v. *Rivera*, 71 D.P.R. 534 (1950) resolvimos que el derecho a asistencia de abogado cubría también el acto aislado de la lectura de la sentencia.

de prestarla, expresamos sin exponer fundamentos pero citando el caso de *Travieso,* que "en esta jurisdicción no existe requisito constitucional de que el acusado deba estar representado por abogado con anterioridad a la lectura de la acusación." En *Waldin* v. *Feliciano,* 62 D.P.R. 213 se presentó la cuestión de asistencia de abogado en el examen preliminar, pero no se resolvió por falta de prueba en el récord. Fue en *Travieso* en que discutimos a fondo por vez primera la cuestión.[4] Sin embargo, los hechos de este caso hacían desviar el problema sobre asistencia de abogado hacia un aspecto más bien procesal, no constitucionalmente en el sentido en que el mismo se afrontó en *Powell* v. *Alabama,* 287 U.S. 45, 77 L.ed. 158 a la luz de la Enmienda XIV de la Constitución, en *Zerbst* bajo la Enmienda VI, y en los de *Hernández Laureano* y demás casos resueltos por nosotros a tenor de la disposición de nuestra Carta Orgánica correspondiente a esta Enmienda. Veamos los hechos del caso de *Travieso.* Al allí acusado se le arrestó y prestó fianza por un delito de atentado contra la vida, y en 9 de octubre de 1939 compareció a la *lectura de la acusación* con la debida representación legal. Dos años después, en 1942, radicó moción de archivo y sobreseimiento de la causa basándose en que la corte no adquirió jurisdicción por no haber él tenido asistencia de abogado desde el momento en que se le arrestó y se inició la investigación del caso por el magistrado investigador. La moción fue denegada y convicto en los méritos, trajo ante nosotros como error la negativa de la corte a archivar el caso a base de la ausencia de asistencia legal "en la etapa inicial del proceso", durante el "examen preliminar".

---

[4] Antes, en *Martínez* v. *Crosas,* 28 D.P.R. 762 (1920), sostuvimos, aplicando el párrafo segundo del art. 2 de la Carta Orgánica, el derecho de un acusado a tener asistencia legal en procedimientos para el sorteo y recusación de un Gran Jurado ante quien habría de someterse una causa de dicho acusado para investigación, y declaramos nulos los procedimientos por la negativa a permitirse tal asistencia legal. Pero de acuerdo con la Ley del Gran Jurado de 1919, estos procedimientos se llevaban a cabo en sesión pública de la corte, con citación de los acusados y del fiscal.

Expresamos de primera intención, que los casos de *Hernández
Laureano*, *Resto* y otros decididos a tono con *Johnson* v.
*Zerbst* y *Powell* v. *Alabama* no eran aplicables, y enfocamos
el problema a la luz del caso de *People* v. *Napthaly*, 105
Cal. 641 (1895) invocado por el allí apelante al igual que
por el peticionario en su apelación. El fundamento estatu-
tario y constitucional de este caso fue el siguiente:

Los arts. 858 al 883 del Código Penal de California de
1872, según disponían en 1902 cuando adoptamos el enjui-
ciamiento criminal de ese Estado, contenían un procedimiento
integral para el examen de un acusado de delito. Al ser
traído ante un magistrado bajo arresto, con o sin un manda-
miento, era deber del magistrado informarle inmediatamente
del cargo *y de su derecho a tener asistencia de abogado en
todas las etapas del procedimiento.* (Art. 858.) Debía con-
cederle tiempo razonable para *enviar por un abogado* y pos-
poner el examen a tal fin, y a petición del acusado, exigir
a un funcionario del orden público que llevara el mensaje a
cualquier abogado en la localidad que el acusado nombrara.
El funcionario debía realizar la encomienda sin demora y sin
costo alguno. El examen del acusado comenzaba al compa-
recer el abogado, y si no comparecía uno, se procedía a dicho
examen luego de esperarse un tiempo razonable para su com-
parecencia. (Arts. 859, 860.) De ahí en adelante el exa-
men preliminar constituía una vista judicial. El acusado
tenía derecho a que el magistrado citara a sus testigos y a
que se tomaran sus declaraciones; a que se examinaran los
testigos de la acusación en su presencia y a contrainterro-
garlos; a que se tomaran los testimonios por escrito, y a dis-
creción del magistrado, taquigráficamente; a que se excluye-
ran otras personas que no fueran las partes y sus abogados,
el Secretario y el custodio del acusado; a que los testigos se
examinaran por separado sin que escucharan los otros; y a
que constaran en récord las objeciones hechas por él a las
preguntas, así como el hecho de si un testigo no contestaba.
Si después de oír la prueba aparecía que no había delito o

que no era responsable el acusado, el magistrado debía orde-
nar su libertad, haciéndolo constar por escrito en el expe-
diente. Si encontraba causa contra el acusado ordenaba
entonces, también por escrito, su detención para que respon-
diera del delito, y le fijaba fianza cuando procedía. El récord
completo de la vista debía archivarse en la corte correspon-
diente con jurisdicción sobre el asunto, y no podía ser divul-
gado, ni se permitía que extraños sacaran copia excepto un
juez con jurisdicción sobre el delito o autorizado a expedir
auto de hábeas corpus, el fiscal general, el fiscal de distrito,
y el acusado o su abogado. (⁵)

En relación con los anteriores procedimientos el art. 995
del Código Penal establecía, y aún dispone, que a petición del
acusado se desestimará la acusación del fiscal (a diferencia
de una acusación presentada por el Gran Jurado) si antes
de radicarse la misma el acusado no ha sido *legalmente dete-*

---

(⁵) El anterior procedimiento subsiste aún en California, con algu-
nas modificaciones para hacer más efectiva la ayuda legal en esa etapa
del examen preliminar. 49 West's *Annotated California Codes, Penal*,
secciones 858–883. El art. 858 que exige al magistrado advertir inme-
diatamente sobre el derecho a asistencia legal, no ha sido alterado. El
art. 859, enmendado últimamente en 1957, requiere además que el magis-
trado *nombre* abogado en esta etapa si el acusado lo desea y no puede
emplear uno, en casos de la jurisdicción original del Tribunal Superior.
El 859 (*a*), adicionado en 1935, no permite que en casos graves el acu-
sado se declare culpable en el examen preliminar *sin estar presente su
abogado, o sin tener asistencia de abogado,* y el 860, enmendado en 1935,
permite la renuncia del examen preliminar en ciertos casos a un acusado
*que esté representado por abogado. Cf: People* v. *Brooks,* 72 Cal.App. 2d
657, 165 P.2d 51; *People* v. *Greene,* 108 Cal.App. 2d 136, 238 P.2d 616;
*People* v. *Williams,* 124 Cal.App. 2d 32, 268 P.2d 156.

En 1953 se adicionó el *art. 866.5* disponiendo que el propio acusado
no puede ser interrogado en el examen *a menos que esté representado por*
*abogado,* o que haya renunciado tal representación después de habérsele
advertido su derecho a la ayuda legal. El art. 870 se enmendó (1909)
disponiendo que a petición de un acusado que se ha detenido para res-
ponder de delito, el magistrado ordene la entrega inmediata, a él o a
su abogado, de las declaraciones unidas a la querella o tomadas en el
examen preliminar.

Las disposiciones de los arts. 858, 859, 859 (*a*) y 860 en casos de delito
grave, se hicieron formar parte de la propia Constitución del Estado, por
enmienda de 1934 a la Sec. 8 del Art. I.

*nido* por un magistrado.([6]) La Constitución de California, por otra parte, disponía como al presente, que podrán perseguirse los delitos mediante acusación del fiscal (*information*) *después de un examen y detención ordenados por un magistrado* o mediante acusación del Gran Jurado (*indictment*) con o sin dicho examen o detención. A Napthaly se le acusó de delito y el magistrado no le advirtió de su derecho a asistencia legal (él era abogado) y se negó a posponer el examen preliminar en lo que él obtenía los servicios de su abogado. Al serle leída la acusación y antes de alegar contra la misma Napthaly pidió su desestimación por habérsele privado de asistencia legal en el examen. Revocando a la corte inferior que se negó a desestimar, la Corte Suprema de California expresó que un examen preliminar que no se pospuso para que el acusado obtuviera abogado no constituía un examen *legal* por ser en violación palpable de un derecho fundamental del acusado, y su detención por el magistrado no era *legal*. En consecuencia, él no había sido *legalmente* detenido por un magistrado antes de radicarse la acusación, y el fiscal no podía, a la luz de la disposición constitucional antes mencionada (Art. I Sec. 8), radicar acusación por lo que procedía desestimarla.([7])

Sin embargo, al adoptar nosotros en el año 1902 el enjuiciamiento penal de California, omitimos establecer aquí tales procedimientos preliminares con la intervención y asistencia de abogado. Por el contrario dimos facultad al fiscal en los casos de la jurisdicción original de las entonces cortes de distrito para radicar acusaciones *válidamente*, después de juramentar testigos o a base de testigos examinados por un

---

([6]) Según enmienda de 1939 se adicionó como un segundo motivo para desestimar si el acusado fue detenido sin causa probable o razonable.

([7]) En igual o parecido sentido que *Napthaly*: *Cf.*: *People* v. *Williams*, 268 P.2d 156 (1954); *People* v. *Mora*, 262 P.2d 594 (1953); *Ex parte James*, 240 P.2d 596 (1952); *People* v. *Coker*, 231 P.2d 81 (1951); *People* v. *Avilez*, 194 P.2d 829 (1948); *People* v. *Miller*, 11 P.2d 884 (1932); *People* v. *Salas*, 250 Pac. 526 (1926). *Cf.*: *People* v. *Chesser*, 178 P.2d 761 (1947); *People* v. *Stroble*, 226 P.2d 330 (1951), confirmado 343 U.S. 181.

juez de paz, bajo su creencia solemne que existe justa causa para formularla. Le facultamos para citar testigos y examinarlos privadamente, y hasta que se proclamó nuestra Constitución, para determinar causa probable, ordenar arrestos y admitir fianzas.[8]   En cuanto al derecho a asistencia legal, el art. 141 adoptado también de California en igual fecha, según pudo quedar modificado por la Ley de 9 de marzo de 1905, lo concedió específicamente al comparecer el acusado a la lectura de la acusación ante el tribunal, lo que hasta cierto punto concreta la disposición general sobre defensa de abogado en un "proceso criminal" del art. 11.   No existe entre nosotros el procedimiento que con frecuencia algunos letrados catalogan de "examen" o "vista preliminar" en un esfuerzo por aplicar al interrogatorio en privado que hacen nuestros fiscales, jurisprudencia desarrollada a la luz de procedimientos preliminares como el de California antes descrito, el de Nueva York y de. muchos otros estados en donde inequívocamente se garantiza en ellos el derecho a asistencia de abogado.

Es cierto que el art. 44 dispone que "(E)l acusado debe ser llevado en todos los casos, a la presencia de un *juez de paz*, sin ninguna demora innecesaria, *con objeto de que sea examinado*, pudiendo cualquier abogado, debidamente autorizado para ejercer en los tribunales de Puerto Rico, visitar a la persona arrestada si ésta lo pidiere."[9]   Aun cuando

[8] Arts. 3, 11, 98, Cód. Enj. Criminal; 44(a), 74 y 100 antes de ser enmendados por la Ley 22 de 24 de julio de 1952; art. 97, antes de ser derogado por dicha ley.

[9] Por la frecuencia con que se invoca en relación con el derecho a una vista preliminar y a la asistencia de abogado, conviene aclarar la posición histórica de este artículo.   Equivale al 825 de California según disponía en 1902, y éste formaba y aún forma parte de una serie de disposiciones, (arts. 811 al 829) bajo el capítulo titulado "The Warrant of Arrest", que comenzaban estatuyendo que al presentarse una querella ante un magistrado de la comisión de delito público, después de tomarle juramento al querellante y a los testigos y convencerse de que se imputaba delito, el magistrado debía *expedir un mandamiento de arresto*. (Arts. 811-813.)   Los arts. 814 y siguientes definían y describían el *mandamiento* y la forma de ejecutarlo en distintas situaciones y el 825, equivalente al art. 44 nuestro, disponía como al presente que el acusado

asumiéramos que ese artículo establece a su manera un examen preliminar en la fase investigadora de los delitos, cosa que no nos toca ahora resolver, no hemos hecho del mismo, como en California, una condición precedente a ser cumplida para la radicación de las acusaciones del fiscal. Por otra parte, nuestro enjuiciamiento tampoco contiene una disposición como el art. 995 antes referido que enlaza en efectos jurídicos la validez del examen con la validez de la acusación.

De ahí que al resolver el caso de *Travieso* donde se trataba de una moción para desestimar la acusación y de archivo, en que no seguimos a *Napthaly* y otras decisiones en sentido igual, el problema constitucional básico sobre el derecho de asistencia de abogado se disolviera en la cuestión procesal relativa a la existencia del "examen preliminar" y a la facultad del fiscal para radicar válidamente una acusación, y que dispusiéramos del caso en la siguiente manera,

---

ha de ser llevado sin demora innecesaria ante el magistrado (que podía ser el que expidió la orden u otro—arts. 821–824), pudiendo un abogado autorizado a ejercer en California visitar al arrestado a petición suya. Los arts. 834 al 855 que seguían al 825 trataban como ahora del arresto y la manera de efectuarlo, inclusive el arresto sin previo mandamiento y por personas particulares. (Arts. 114 al 130 de nuestro Código.) Venía entonces el 858 con el cual, según hemos expresado, comenzaba todo el procedimiento de examen preliminar por el magistrado.

Según fue posteriormente enmendado en 1907 y en 1927, el art. 825 impone la obligación al funcionario que ejecuta el arresto de llevar al detenido ante el magistrado sin demora innecesaria y a lo sumo dentro de 48 horas después del arresto, y un abogado, *o un familiar*, pueden visitar a la persona si ésta lo solicita. Se declara delito menos grave el que un funcionario a cargo del detenido se niegue a permitir que un abogado lo visite, y se le obliga a pagar a la parte agraviada $500 si así se negare.

En la manera desarticulada en que el art. 44 y otros se trajeron a nuestro enjuiciamiento, no se capta con precisión su verdadero entronque, sobre todo cuando no adoptamos los artículos que le complementan relativos al examen preliminar, y cuando el mismo da la impresión de repetir el art. 32 que le precede (equivalente al 849 de California) que históricamente enlaza con los arts. 114 al 130 antes mencionados. Cabe observar que nosotros intercalamos al art. 44 la frase *"con objeto de que sea examinado"* que no aparecía ni está en el texto de California, y nos referimos específicamente al *juez de paz* en lugar de a un magistrado, que en tal caso hubiera incluído al propio fiscal. (Art. 13 Cód.

si bien el hecho de no aplicar los de *Hernández Laureano*, *Resto* y otros antes mencionados podía crear la inferencia de que no reconocíamos el derecho a asistencia legal antes de la lectura de la acusación:

"Ni la Ley Orgánica de Puerto Rico ni nuestro Código de Enjuiciamiento Criminal contienen disposición alguna que requiera como requisito para la validez de una acusación, que ésta sea radicada por el fiscal después de haberse practicado un examen preliminar y librado orden de prisión por un magistrado o juez instructor.

"De acuerdo con el artículo 3 del Código de Enjuiciamiento Criminal, cuando se trata de un delito, como el del caso de autos, del cual tiene jurisdicción original la corte de distrito, el proceso deberá iniciarse 'en virtud de acusación presentada por el fiscal en sala de justicia y confirmada con su declaración jurada que será suficiente si en ella se expresa que la acusación se funda en las declaraciones de testigos juramentados por él o las declaraciones de testigos examinados ante un juez instructor.'

---

Enj. Cr.) Pero cualquiera que pueda ser el alcance de este artículo, del mismo no se ha hecho depender la validez de la acusación investigada y presentada en corte por el fiscal según mandan los arts. 3, 11(4), 70 y 98, o de los procedimientos posteriores; ni requiere al fiscal permitir la presencia de abogado durante sus interrogatorios o a que haga advertencia alguna a tal efecto, lo cual sería un contrasentido con lo dispuesto en los propios arts. 3 y 11(4). El art. 825 y su equivalente el 44 contienen mandatos a ser cumplidos por funcionarios ejecutivos del orden público, no por los judiciales. Hemos visto cómo se castiga en California la inobservancia de dichos mandatos, y nuestro Código Penal en su art. 134 declara reo de "misdemeanor" a todo funcionario o persona que habiendo arrestado a otra, voluntariamente tardare en conducirla ante un juez de paz u otro funcionario competente para examinarla. La Corte Suprema de California aun cuando censura rigurosamente la violación de este artículo, y ha resuelto que ello constituye arresto ilegal, hasta donde sabemos no ha decretado, por ese solo hecho, la nulidad del juicio posterior habido en corte, o la de la sentencia. Faltando otros ingredientes de coacción no ha declarado inadmisible en evidencia, por tal solo motivo, una confesión prestada durante ese período de detención no permitida. Igual o parecida actitud han seguido otros estados en donde existen disposiciones similares. *Cf: Lisenba* v. *California*, 314 U.S. 219 (1941); *People* v. *Speaks*, 319 P.2d 709 (1958); *People* v. *Soto*, 317 P.2d 1005 (1957); *People* v. *Jablon*, 314 P.2d 824 (1957); *People* v. *McCrasky*, 309 P.2d 115 (1957); *Rogers* v. *Superior Court of Alameda County*, 291 P.2d 929 (1955); *Dragna* v. *White*, 289 P.2d 428 (1955); *People* v. *Guarino*, 282 P.2d 538 (1955); *People* v. *Collins*, 255 P.2d 59·

"La jurisprudencia que hemos examinado sostiene que al dejar de presentar una moción, antes del o en el acto del *arraignment,* para que se desestime la acusación por el fundamento de no habérsele concedido un examen preliminar, el acusado renuncia a esa objeción. *Ex parte McConnell,* 83 Cal. 558; *People* v. *Ronsee,* 26 Cal. App. 100, 146 Pac. 65; *People* v. *Ramey,* 27 P.2d 941; *People* v. *Walsh,* 243 Pac. 31, 32; *People* v. *Salas,* 250 Pac. 526; y *State* v. *Norman,* 52 Pac. 986.

"También renuncia el acusado a la objeción de no haberse celebrado un examen preliminar, cuando al ser arrestado presta fianza para comparecer ante la Corte de Distrito a oír la acusación que había de formularle el fiscal. *Nowak* v. *Waller,* 56 Hun (N.Y.) 647, 10 N.Y. Supp. 199, confirmado 132 N.Y. 590, 30 N.E. 868."

Al reproducir los anteriores fundamentos resolviendo la apelación del peticionario (66 D.P.R. 218–221) hicimos parecido enfoque procesal, particularmente al exponer como en el de *Travieso,* que aun cuando nuestras leyes requiriesen que se practicara previamente un examen preliminar, el peticionario había renunciado su derecho al no pedir que se desestimara la acusación.([10])

---

(1953), cert. denegado 346 U.S. 803; *People* v. *Boyden,* 253 P.2d 773 (1953); *People* v. *Stroble,* 226 P.2d 330, *conf.* 343 U.S. 181, reconsideración denegada, 343 U.S. 952; *People* v. *Zammora,* 152 P.2d 180 (1944); *People* v. *Imamura,* 147 Pac. 219 (1915); *State* v. *Mihoy,* 93 A.2d 661 (N.H. 1953); *State* v. *Mangino,* 86 A.2d 425 (N.J. 1952).

([10]) La única causa que provee nuestro enjuiciamiento para desestimar (*set aside*) la acusación al formularse la misma, es que no viniere firmada y jurada por el fiscal (arts. 144, 145 y 146). Según el art. 996 de California, cualquier irregularidad o ilegalidad del examen preliminar quedan renunciadas si el acusado no solicita, bajo el art. 995, la desestimación de la acusación al leérsele ésta, y antes de alegar contra la misma. La irregularidad o ilegalidad no puede ser levantada, por primera vez en apelación. *Cf: People* v. *Nation,* 239 P.2d 891 (Cal. 1952); *People* v. *Wilson,* 236 P.2d 9 (Cal. 1951) cert. den. 342 U.S. 915; *People* v. *Hall,* 224 P.2d 812 (Cal. 1950); *People* v. *Knight,* 218 Pac. 79 (Cal. 1923); *Lingo* v. *Hann,* 71 N.W.2d 716 (Neb. 1955); *State* v. *Lubetkin,* 276 P.2d 520 (Ariz. 1954); *State* v. *Buchanan,* 252 P.2d 524 (Idaho 1953); *Clark* v. *State,* 218 P.2d 410 (Okl. 1950); *People* v. *Tate,* 23 N.W.2d 211 (Mich. 1946). Tampoco procede por hábeas corpus. *Cf: Application of Berry,* 279 P.2d 18 (Cal. 1955); *Ex parte Razutis,* 219 P.2d 15 (Cal. 1950), cert. den. 340 U.S. 842; *Ex parte Tedford,* 192 P.2d 3 (Cal. 1948), cert. den. 335 U.S. 847; *Ex parte Haas,* 44 P.2d 411 (Cal. 1935); *Bowman* v. *Alvis,* 96 N.E.2d 605 (Ohio 1950).

■■■■ El problema del derecho a la asistencia de abogado como se nos presenta en la solicitud de hábeas corpus penetra más hondo en el campo de las garantías constitucionales. En este aspecto no lo hemos discutido antes y por ello el que expidiéramos el auto. Dos son las proposiciones que debemos afrontar: (1) si bajo el párrafo segundo del art. 2 de la Carta Orgánica que regía, es nulo por falta de jurisdicción el proceso en corte del peticionario tramitado en 1944 en el cual disfrutó de la debida asistencia legal, por el hecho de que mientras se investigó el delito y antes de ser traído para la lectura de la acusación él no fue asistido por abogado ni se le advirtió de tal derecho por autoridad competente; y (2) si esa parte de nuestro sistema de enjuiciamiento criminal que permitió al Ministerio Público hacer privadamente la investigación del delito y el interrogatorio del peticionario en donde él hizo una confesión, sin el derecho a tener allí la asistencia de un abogado, está de tal manera en conflicto con aquellos principios fundamentales de libertad y justicia encarnados en las cláusulas del debido procedimiento de ley de las Enmiendas V y XIV de la Constitución Federal, al extremo de que el proceso posterior en corte aun con la debida asistencia legal dejó de constituir un juicio imparcial y justo a la luz de dichas garantías constitucionales, y ha de anularse.(11)

---

(11) En el juicio de asesinato del peticionario la cuestión surgió como problema de la admisibilidad en evidencia de su confesión dada en el curso de un interrogatorio en que como se sabe, no tenía abogado. En este recurso el peticionario no ha presentado prueba independiente de la que desfiló en el juicio, dirimió el jurado, y confirmamos nosotros. Aun cuando opináramos que el hecho en sí de no tener abogado cuando prestó la confesión constituía un obstáculo legal para su admisión en evidencia, en este recurso no podríamos ejercer el poder correctivo de ordenar un nuevo juicio eliminándola, a menos que ese hecho por sí solo convirtiera la confesión en involuntaria, en cuyo último caso sería imperativo fuera de toda discusión anular la sentencia condenatoria, bajo las cláusulas del debido procedimiento de ley. Al hecho de si la confesión era involuntaria por ese solo motivo, nos referiremos más adelante. En este recurso, por lo tanto, quedamos restringidos a cuestionar la nulidad del juicio por falta de jurisdicción bajo el art. 2 de la Carta Orgánica de 1917, o a cuestionar su nulidad bajo las cláusulas del debido procedimiento.

Como problema de jurisdicción es definitivo en las cortes federales bajo la Enmienda VI, y lo hicimos entre nosotros bajo el art. 2 de la Carta Orgánica, el derecho absoluto e incondicional de un acusado a tener representación de abogado de su propia selección o nombrado por la corte, tan pronto hay una acusación presentada y el acusado debe comparecer a un tribunal de justicia, excepto, desde luego, cuando inteligente y competentemente se renuncia a la asistencia legal. Las normas jurisprudenciales de *Johnson* v. *Zerbst*, supra, *Walter* v. *Johnston*, 312 U.S. 125 (1941) y *Glasser* v. *United States*, 315 U.S. 60, 86 L. ed. 680 (1942) se perpetuaron en ley escrita codificadas en la *Regla 44* de las de Procedimiento Criminal Federal. [12]

La decisión de *Johnson* v. *Zerbst*, sin embargo, no fue más atrás de sus propios hechos, bien sabidos por cierto. De su faz no extendió la Enmienda VI en lo que respecta a representación legal a etapas anteriores a la comparecencia ante el tribunal después de presentada la acusación.

En tanto la razón filosófica de *Zerbst* sobre la necesidad de la intervención del abogado fue un derivativo de los pronunciamientos de *Powell* v. *Alabama*, supra, puede decirse que la racionalización en el orden filosófico se transfiguró y tomó cuerpo como precepto constitucional en aquel clásico principio del debido procedimiento que requiere ser juzgado

---

[12] La Regla 44, efectiva el 21 de marzo de 1946, dispone que si el acusado comparece a corte sin abogado, la corte le advertirá sobre su derecho a tener abogado y le designará uno que lo represente en todas las etapas del procedimiento, a menos que él elija proceder sin abogado o pueda obtener uno. En casos capitales y de traición el acusado había tenido siempre, desde 1790, el derecho a que se le designara abogado de así solicitarlo pero en cuanto a los demás delitos se había interpretado la Enmienda VI hasta la decisión de *Zerbst*, en el sentido de que permitía pero no requería, como cuestión jurisdiccional y de debido procedimiento de ley, la asistencia de abogado. Barron, *Federal Practice and Procedure*, Vol. 4 sec. 2661. La Regla 5, referente al examen preliminar ante un Comisionado, dispone que éste deberá informar al acusado del cargo contra él, de su *derecho a obtener abogado* y de su derecho a un examen preliminar. Antes de la Regla 5, efectiva en marzo 21 de 1946, la sec. 595 del Título 18 U.S.C. no imponía la obligación de tal advertencia.

y oído antes de ser condenado, y como cosa consubstancial con el derecho de audiencia, el que lo sea por abogado si se deseare. De *Powell* v. *Alabama* son estas palabras: (287 U.S. págs. 45, 68–69)

"Nunca se ha dudado por esta corte o por ninguna otra hasta donde sabemos, que una notificación y audiencia son pasos preliminares esenciales a la imposición de una sentencia ejecutoria, y que ellos, junto a un tribunal legalmente competente con jurisdicción sobre el asunto, constituyen componentes básicos del requerimiento constitucional de debido procedimiento de ley. Las palabras de Webster, tan frecuentemente citadas, que por 'la ley del país' [the law of the land] se tiene por objeto 'una ley que oye antes de condenar', se han repetido en variadas formas de expresión en una multitud de decisiones. En *Holden* v. *Hardy*, 169 U.S. 366, 389, la necesidad de la debida notificación y una oportunidad de ser oído se cataloga entre los 'principios de justicia inmutables inherentes al concepto mismo de gobierno libre, de la cual ningún miembro de la Unión puede hacer caso omiso'. *Galpin* v. *Page*, 18 Wall. 350, 368— 369, dijo que la norma de que nadie sea personalmente obligado hasta que haya tenido su día en corte era tan antigua como la ley, y significaba que debía ser citado a comparecer y dársele la oportunidad de ser oído. 'Un fallo en ausencia de tal notificación y oportunidad carece de todos los atributos de una adjudicación judicial; es usurpación y opresión judicial, y nunca puede ser sostenido allí donde la justicia se imparte justamente' . . .

"*¿Qué, entonces, incluye una audiencia? Históricamente y en la práctica, por lo menos en nuestra nación, siempre ha incluído el derecho a la ayuda de abogado cuando se desea y se provee por la parte que afirma el derecho. El derecho a ser oído sería, en muchos casos, de poco valer si no incluyera el derecho a ser oído por abogado.*

" . . . . . Si en cualquier caso, civil o criminal, una corte estatal o federal arbitrariamente se negara a oír a una parte por abogado, empleado y compareciendo por ella, razonablemente no podría dudarse que tal negativa constituiría la *negación de una audiencia,* y, por consiguiente, del debido procedimiento de ley en sentido constitucional." (Énfasis adicionado.)

El derecho a ser oído por abogado es substancia del derecho a ser oído antes de ser condenado. Aparentemente tal es el fundamento por lo cual no existe una decisión del Tribunal Supremo de Estados Unidos en que, bajo la cláusula de defensa por abogado de la Enmienda VI, y en el sentido de *Zerbst*, se haya decretado la nulidad del juicio posterior en una corte federal a base de la falta de asistencia legal en etapas previas al mismo bien sea ante un Gran Jurado, ante un Comisionado de Estados Unidos, o mientras el acusado está en manos de los agentes policiacos. En esas etapas no se pasa juicio adjudicando en definitiva la libertad de un ciudadano. Por supuesto, no tenemos ahora en mente aquellas situaciones en que el Tribunal Supremo ha tomado en cuenta la ausencia de abogado en tales etapas como uno de muchos otros factores e ingredientes que forman un conjunto de circunstancias conducentes a la negación de un juicio imparcial y justo, o a la involuntariedad de una confesión, ni tenemos en mente, en cuanto a lo federal respecta, aquellas otras situaciones que han culminado en la regla supervisora y disciplinaria de *McNabb*. ([18])

En *Burall* v. *Johnston*, 146 F.2d 230 (1944) el Noveno Circuito rechazó la contención del allí peticionario en hábeas corpus, de que la corte que le juzgó en los méritos carecía de jurisdicción porque él no tuvo la asistencia de abogado en el examen preliminar ante el comisionado. El Tribunal Supremo se negó a revisar. 325 U.S. 887. *Cf: Ferguson* v. *District of Columbia*, 133 A.2d 111 (1951) y casos allí citados. En *Gilmore* v. *United States*, otro hábeas corpus, 129 F.2d 199 (1942) el Décimo Circuito se pronunció así: "Su alegación de que a él no se le proveyó de consejo legal antes de firmar la renuncia de inmunidad y declarar ante el Gran Jurado, carece de méritos. Descansa en la Sexta Enmienda de la Constitución la cual garantiza que 'en todos los procesos criminales, el acusado gozará del derecho . . .

---

([18]) *McNabb* v. *United States*, 318 U.S. 332, 87 L.ed. 819 (1943).

a tener asistencia de abogado para su defensa' . . . . La investigación hecha por el Gran Jurado que resultó en la presentación de la acusación no era un proceso criminal en el significado de la Sexta Enmienda. Su derecho a tener asistencia de abogado para su defensa no surgió hasta que la acusación fue presentada en corte por el gran jurado. Discutiendo la Sexta Enmienda, la Corte Suprema en *Counselman* v. *Hitchcock*, 142 U.S. 547, a la página 563, 12 S. Ct. 195 a la página 198, 35 L.ed. 1110, dijo: 'Pero esta disposición claramente se refiere a un proceso criminal contra una persona acusada y que ha de ser juzgada por un pequeño jurado. Un proceso criminal bajo el artículo 6 de las enmiendas es más limitado [en sentido] que "un caso criminal" bajo el artículo 5 de las enmiendas' ". El Tribunal Supremo también se negó a revisar. 317 U.S. 631.

Está bien establecido tanto en la jurisdicción federal como en los estados, que no hay derecho a asistencia legal en las investigaciones ante un gran jurado, aun cuando la persona resulte ser acusada. *Cf: United States* v. *Scully*, 225 F.2d 113 (1955), (C.A. 2) cert. den. 350 U.S. 897; *United States* v. *Levine*, 127 F. Supp. 651 (1955); *United States* v. *Blanton*, 77 F. Supp. 812 (1948); *People* v. *Dale*, 179 P.2d 870 (1947); *Wickline* v. *Alvis*, 144 N.E.2d 207 (1957). *Cf: Setser* v. *Welch*, 159 F.2d 703, (C.A. 4, 1947) cert. den. 331 U.S. 840; *Council* v. *Clemmer*, 177 F.2d 22, (C.A.D.C. 1949), cert. den. 338 U.S. 880, y casos citados en el escolio (10). Por lo menos desde el caso de *Goldsby* v. *United States*, 160 U.S. 70, 40 L.ed., 343 (1895), la disposición gemela de la propia Enmienda VI sobre el derecho del acusado a carearse con los testigos en su contra en un "proceso criminal" se ha interpretado que no incluye procedimientos anteriores al juicio. *Cf: Carrison* v. *Johnston*, 104 F.2d 128 (C.A. 9) (1939); *Moore* v. *Aderhold*, 108 F.2d 729 (C.A. 10) (1939); *McDonald* v. *Hudspeth*, 129 F.2d 196 (C.A. 10) (1942).

Cualquiera que haya sido nuestro criterio en el pasado en cuanto al momento en que comienza el *"proceso criminal"* a otros efectos, *Cf: Pueblo* v. *Rivera,* 9 D.P.R. 403 (1905); *Pueblo* v. *Capestany,* 37 D.P.R. 586 (1928); *Pueblo* v. *Báez,* 40 D.P.R. 15, (1929); *Pueblo* v. *Lugo,* 58 D.P.R. 183 (1941), como problema jurisdiccional a ser resuelto en este recurso y de la nulidad del juicio y de la sentencia condenatoria, bajo el art. 2 de la Carta Orgánica de 1917 el derecho incondicional y absoluto del peticionario a tener defensa de abogado en el *"proceso criminal"* surgía ya radicada la acusación con que principia el desenvolvimiento jurídico de notificarle y oírle antes de emitirse fallo en definitiva sobre su culpabilidad o inocencia. Bajo la primera de las dos proposiciones señaladas el juicio y la condena del peticionario no fueron nulos, y no procede por este motivo, que se le excarcele. (14)

En lo que respecta al *debido procedimiento de ley* de las Enmiendas V y XIV, y ya entramos en el segundo aspecto de la cuestión, el problema envuelve otras consideraciones. El peticionario entiende que la decisión del Tribunal Supremo en *In re Groban,* 352 U.S. 330 (1957) 1 L.ed.2d 376 condena, a la luz de dichas Enmiendas, la investigación y el interro-

---

(14) En el nivel estatal, dentro de la Enmienda XIV, la cuestión ha presentado un frente más fluido y menos preciso, por lo menos en cuanto a la obligación de nombrar abogado respecta, haciéndose depender de todo un conjunto de circunstancias concurrentes en la negativa de un juicio imparcial, así como de la naturaleza o gravedad del delito. Si bien las decisiones del Tribunal Supremo señalan una tendencia cada vez más pronunciada a hacer tan efectivo el derecho a asistencia legal en los juicios estatales como en los juicios federales, —*Cf: Moore* v. *Michigan,* 355 U.S. 155 (1957), 2 L.ed.2d 167; *Chandler* v. *Fretag,* 348 U.S. 3 (1954); *Massey* v. *Moore,* 348 U.S. 105 (1954) 99 L.ed. 135; *Palmer* v. *Ashe,* 342 U.S. 134 (1951) 96 L.ed. 154; *Gibbs* v. *Burke,* 337 U.S. 773 (1949) 93 L.ed. 1686; *Uveges* v. *Pennsylvania,* 335 U.S. 437 (1948) 93 L.ed. 127; *Townsend* v. *Burke,* 334 U.S. 736 (1948) 92 L.ed. 1690; *Wade* v. *Mayo,* 334 U.S. 672 (1948) 92 L.ed. 1647; *Rice* v. *Olson,* 324 U.S. 786 (1945) 89 L.ed. 1367; *House* v. *Mayo,* 324 U.S. 42 (1945) 89 L.ed. 739, —todavía está en pie *Betts* v. *Brady,* 316 U.S. 455 (1942) 86 L.ed. 1595; —y véase: *Bute* v. *Illinois,* 333 U.S. 640 (1948) 92 L.ed. 986; *Gryger* v. *Burke,* 334 U.S. 728 (1948) 92 L.ed. 1683 y *Quicksall* v. *Michigan,* 339 U.S. 660 (1950) 94 L.ed. 1188.

gatorio fiscal en privado que autoriza nuestro procedimiento, que no permite al acusado en ese entonces la presencia de abogado o de familiares. En *Groban* se trataba de la negativa de unos ciudadanos a declarar ante el Jefe de Bomberos que estaba autorizado por ley para conducir investigaciones en privado de los incendios, a menos que se les permitiera estar asistidos de abogado al declarar. El estatuto compelía a dar testimonio. Fueron encarcelados sumariamente por el Jefe hasta que declararan, y cuestionaron su prisión por hábeas corpus alegando que ellos tenían derecho, bajo la cláusula del debido procedimiento de ley, a tener asistencia de abogado en el interrogatorio. En una opinion por mayoría de 5 a 4 se sostuvo que tal privación de abogado, en una investigación que no era un juicio criminal ni un procedimiento administrativo en que se determinaría la responsabilidad, por el fuego, de los allí peticionarios, no violaba el debido procedimiento, y que aunque la evidencia obtenida podría exponer a un testigo a ser acusado, hasta tanto no se le formularan cargos criminales la protección constitucional era el privilegio de no autoincriminarse. Explicando su voto con la mayoría el Juez Frankfurter, a quien se unió el Juez Harlan, observó que si el estatuto hubiera tenido por objeto la investigación secreta de aquellos sospechosos de incendio, la situación sería distinta; que el Jefe de Bomberos no era un *acusador;* y el hecho de que se sostuviera la validez de esta investigación secreta de tipo administrativo *no acusatoria* no implicaba que habría de sostenerse poderes secretos de investigación conferidos a un fiscal de distrito. De estas manifestaciones, en parte dirigidas a contestar argumentos de la opinión minoritaria, el peticionario ante nos deduce y sostiene que el Tribunal Supremo en ese resolvió afirmativamente que las investigaciones e interrogatorios en privado realizados por nuestros fiscales para fines acusatorios violan el debido procedimiento de ley.

Ciertamente el peticionario infirió demasiado de las expresiones de esa opinión. No mucho después, en el caso de

*Crooker* v. *California*, 357 U.S. 433, 2 L.ed.2d 1448, que fue resuelto en 30 de junio de 1958 ya radicada la petición de hábeas corpus y el día en que expedimos el auto, en opinión de una mayoría de la cual formaron parte los Jueces Frankfurter y Harlan el Tribunal Supremo resolvió que una confesión dada por el allí acusado mientras era sometido a interrogatorio por agentes policiacos no estaba viciada de coacción e involuntariedad a la luz de todas las circunstancias y demás factores presentes, pasando por primera vez sobre la naturaleza coercitiva o involuntaria de una confesión obtenida después de negársele al acusado su petición expresa de consultar abogado en esa etapa investigadora. (15)

Debido a las serias implicaciones de debido procedimiento de ley que surgen al negarse por el Estado una petición para emplear abogado, expresa la opinión, se expidió certiorari. (357 U.S. 434.) (16)

Se concluyó, en primer término, *que el mero hecho* de una detención e interrogatorio de la policía en privado a una per-

---

(15) Surge de los hechos que Crooker fue arrestado a eso de la 1:30 P.M. y conducido a un cuartel donde se le pidió que se sometiera a la prueba del detector de mentiras. Se negó a ello y manifestó su deseo de llamar un abogado. Fue formalmente interrogado entre 8:30 y 9:30 P.M., principalmente sobre su negativa a someterse al detector. Durante ese período solicitó la oportunidad de obtener un abogado mencionando específicamente a uno que él creía lo habría de representar, y se le dijo que después que se terminara la investigación él podía llamar un abogado. A las 9:30 se le condujo a otro cuartel de policía y fue interrogado desde las 11 P.M. hasta la media noche y luego de 1 a 2 A.M. En el curso de la siguiente hora escribió y firmó su confesión del crimen. Se le llevó entonces a la casa de la víctima para reproducir la escena y a las 5 A.M. fue recluído en la cárcel. Por la tarde de este segundo día lo llevaron ante el Fiscal para que repitiera oralmente su confesión. Crooker se resistió y pidió nuevamente que se llamara a un abogado. Se hizo la llamada y el Fiscal escuchó la conversación por una extensión telefónica. En un momento interrumpió para negar que se hubiera obligado al acusado a contestar las preguntas de la policía. A las 7 P.M. de esa tarde el acusado conferenció con su abogado en la cárcel. En el curso de la investigación se le hizo la advertencia de que él no venía obligado a declarar nada que él no quisiera.

(16) El Tribunal Supremo limitó la revisión a lo siguiente:

"(1) ¿Se privó al acusado del debido procedimiento de ley por la negativa de los funcionarios investigadores de permitirle consultar a un abogado al ser así solicitado por él mientras estaba bajo custodia?

sona bajo custodia oficial no hacía la confesión involuntaria, así como tampoco el hecho de que se violaran disposiciones estatutarias locales sobre el deber de conducir al detenido prontamente ante un magistrado. *Brown* v. *Allen*, 344 U.S. 443 (1953); *Fikes* v. *Alabama*, 352 U.S. 191 (1957). Resulta, por tanto, que nuestro sistema acusatorio de investigación en privado no cae, *per se*, al margen del debido procedimiento. Dispuesto lo anterior, el Tribunal Supremo sostuvo entonces que la contención del acusado en cuanto a coacción descansaba en la negativa a su petición para consultar abogado, y tal contención fue igualmente rechazada citándose *Brown* v. *Allen*, 344 U.S. 443 (1953); *Stroble* v. *California*, 343 U.S. 181 (1952); *Gallegos* v. *Nebraska*, 342 U.S. 55 (1951), en donde se había sostenido que confesiones de acusados indigentes hechas antes de nombrárseles abogado por el Estado no eran por tal motivo involuntarias, aun en aquellos procesos en que una convicción sin abogado violaría el debido procedimiento de la Enmienda XIV.([17])

Pasando al argumento de que aun cuando la confesión fuera voluntaria, su *uso* violaba el debido procedimiento por haberse obtenido la misma después de una negativa a la petición del acusado para consultar abogado ya que esto le privaba del derecho constitucional a representación y consejo legal, y por lo tanto viciaba en sí misma la confesión por falta del debido procedimiento aunque voluntariamente hecha, el Tribunal también rechazó el argumento. Reafirmando que la asistencia de abogado garantizada en los procesos estatales por el debido procedimiento de ley de la

---

"(2) ¿Se le negó al acusado el debido procedimiento de ley por la admisión en evidencia de una confesión obtenida de él mientras estaba bajo custodia y después de haber estado bajo custodia durante 14 horas sin que se le hubiera permitido consultar con su abogado?"

([17]) *Cf:* ' *Stein* v. *New York*, 346 U.S. 156, 186–188, 97 L.ed. 1522 (1953); *Lyons* v. *Oklahoma*, 322 U.S. 596, 599, 88 L.ed. 1481 (1943); *Lisenba* v. *California*, 314 U.S. 219, 239–240, 86 L.ed. 166 (1941); *State* v. *Rogers*, 120 A.2d 409, 412 (Conn. 1956) cert. den. 351 U.S. 952; *State* v. *Grillo*, 93 A.2d 328, 332 (N.J. 1952), cert. den. 345 U.S. 976; *State* v. *Buteau*, 68 A.2d 681 (Conn. 1949), cert. den. 339 U.S. 903; *People* v. *Kelly*, 89 N.E.2d 27, 30 (Ill. 1949).

Enmienda XIV no sólo incluía el derecho a nombramiento de abogado en ciertos casos, sino también el derecho de un acusado a una razonable oportunidad para obtenerlo de su propia selección, dijo la mayoría: (357 U.S. pág. 439.)

"Bajo estos principios, *la negativa del estado a una petición para emplear abogado* viola el debido procedimiento no sólo si se priva al acusado de abogado en el juicio en los méritos, *Chandler* v. *Fretag,* supra, sino también si se le priva de abogado en cualquier parte de los procedimientos anteriores al juicio, *siempre que se le perjudique de tal manera, que dicha privación imprima su juicio posterior con la carencia de 'aquella fundamental imparcialidad esencial al concepto mismo de justicia'.* [Citas] Esta última determinación depende necesariamente *de todas las circunstancias del caso."* (Énfasis adicionado.)

Ante todas las circunstancias del caso, —una confesión voluntariamente dada por un acusado con educación de colegio quien había asistido un año a una escuela de derecho y que conocía su derecho a permanecer callado, —se concluyó finalmente que a Crooker no se le había creado tal situación de perjuicio ni se había tomado ventaja de él en forma tal como para entenderse violado su derecho al debido procedimiento.

De nuevo, en *Cicenia* v. *Lagay,* 357 U.S. 504, 2 L.ed. 1523, resuelto en igual fecha que *Crooker,* el Tribunal Supremo afrontó similar contención a la luz del hecho de que en este caso el acusado solicitó durante la investigación, y se le negó, el consultar con un abogado ya contratado por él. Distinto a Crooker él admitió la voluntariedad de su confesión, pero sostenía que la misma estaba viciada por la negativa de la policía a permitirle asesorarse con su abogado durante la detención en el cuartel, y que esto de por sí violaba el debido procedimiento independientemente de las particulares circunstancias envueltas. El Tribunal rechazó una vez más el argumento de que el acusado tenía un derecho constitucional bajo la Enmienda XIV a consultar con un abogado en esa etapa investigadora, *Crooker,* supra. Estableciendo el

equilibrio propio que debe regir entre el fundamental derecho a asistencia legal en casos criminales, de un lado, y la obligación de las autoridades policiacas de perseguir el crimen, del otro, expresó el Juez Harlan hablando por la mayoría que la fórmula de conciliación entre esos dos imperativos encontrados no ha de ser un pronunciamiento abarcador de que uno debe ceder al otro, sino que al decidirse si una convicción estatal cumple los requisitos del debido procedimiento, se ha buscado el adecuado ajuste o acomodo, considerándose la falta de abogado un factor pertinente al determinarse, de entre todas las circunstancias, si la convicción fue resultado de una fundamental injusticia.

Vemos, pues, que distinto a como presentamos el problema a la luz del art. 2 de la anterior Carta Orgánica de 1917, y como se ha presentado en las cortes federales a tenor de la Enmienda VI, bajo el debido procedimiento de ley de cualquiera de las Enmiendas V o XIV el derecho a asistencia de abogado no está ineludiblemente restringido al proceso en corte. *Crooker, Cicenia,* supra; *Moore* v. *Michigan,* 351 U.S. 155 (1957), 2 L.ed.2d 167; *Chandler* v. *Fretag,* supra; *Reece* v. *Georgia,* 350 U.S. 85 (1955), 100 L.ed. 77. Pero no existe el derecho absoluto bajo el debido procedimiento a disfrutar de representación o asistencia legal en la etapa investigadora del delito, ni se violaría tampoco la garantía constitucional por la negativa de las autoridades a una solicitud de asesoramiento legal en tales etapas a menos que, considerado el hecho en conjunto con las demás circunstancias y factores presentes, la sentencia condenatoria sea el fruto de toda una situación repulsiva a aquellos principios básicos de libertad y justicia que inspiran un juicio imparcial y justo.

¿Estamos ante una situación semejante en el caso de autos? En primer lugar, el peticionario no ha alegado en su solicitud que la confesión se produjera mediante coacción física y mental, o de ningún otro tipo. Por consiguiente, no nos ha presentado en este recurso el problema de su invo-

luntariedad, que de haberlo sido, ciertamente viciaba el proceso bajo el debido procedimiento. En el alegato complementario que radicara después de la vista, expresamente reafirma que no ha alegado el que su confesión fuera obtenida por coacción "moral" y física. Tampoco ofreció prueba a tal efecto independiente, o adicional, a la desfilada en el juicio de asesinato, sobre la cual pasamos al considerar su apelación. (66 D.P.R. 219.) Su caso descansa escuetamente en su alegado derecho constitucional absoluto a tener asistencia de abogado mientras se le interrogaba en el curso de la investigación del Ministerio Público, bajo su peculiar interpretación y análisis del caso de *In re Groban*. El peticionario no pidió en ese entonces que se le permitiera tener asistencia o consejo legal, pero aun cuando lo hubiere solicitado, hemos visto que él no tenía tal derecho constitucional absoluto a ello bajo la cláusula del debido procedimiento; tampoco a tenor del art. 2 de la Carta Orgánica de 1917 o de las disposiciones locales de nuestro enjuiciamiento criminal. Con ello cae por su propio peso el argumento de que el Fiscal Aponte venía obligado a hacerle advertencias sobre tal derecho, inexistente como hemos dicho en esa etapa, para que se entendiera renunciado conscientemente por el peticionario.

■ En segundo lugar, en ausencia de planteamiento de involuntariedad no cabe concluir a la luz del propio caso de *Crooker* que la confesión sin asistencia de abogado creara una situación de fundamental injusticia que vició el juicio posterior bajo el debido procedimiento, por la alegada condición mental del peticionario. Hemos examinado la prueba ante nos que es la misma que desfiló en el juicio de asesinato considerada al resolverse la apelación, y no hay base para concluir, como no lo hicimos en ese entonces, que el peticionario era un retardado mental incapaz de entender las advertencias sobre su derecho a no declarar y sobre el uso de su testimonio. Aunque un psicólogo declaró que Rivera Escuté era "morón" (a base de dos exámenes de

vocabulario a que lo sometió), la manera en que el peticionario relató los hechos en la confesión y contestó a las preguntas del Fiscal destruye toda idea de anormalidad mental y refleja una mente clara con inteligencia suficiente para darse cuenta de lo que ocurría, sobre todo considerando el hecho de que había tenido una instrucción hasta el cuarto grado.

El peticionario había estado familiarizado con investigaciones y procesos en corte. Además de su convicción de escalamiento por lo cual se le recluyó en la Escuela Industrial Reformatoria, después de ser puesto en libertad había estado procesado y cumplió un año de cárcel por hurto de uso.

A la luz de todo lo anteriormente expresado, *no procede tampoco decretar la excarcelación del peticionario a tenor de la cláusula constitucional del debido procedimiento de ley. Se dictará sentencia declarándose sin lugar el recurso de hábeas corpus.*

El Juez Presidente Sr. Negrón Fernández no intervino.