El Pueblo de Puerto Rico, demandante y apelado, *v.* Urbano Sánchez Vega, acusado y apelante.

*Número:* CR-63-381      *Resuelto:* 31 de marzo de 1969

*Santos P. Amadeo, José Enrique Amadeo* y *Manuel García Marrero,* abogados del apelante; *Rafael A. Rivera Cruz, Procurador General,* y *J. F. Rodríguez Rivera, Subprocurador General,* y *Adolfo Negrón Cruz, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

En 13 de mayo de 1963 el apelante fue convicto de incendio malicioso en primer grado y sentenciado a cumplir una pena indeterminada de diez a quince años de presidio. Apeló por derecho propio. Considerados los alegatos, emitimos en 5 de junio de 1964 una opinión *per curiam,* confirmando la sentencia. En 1 de mayo de 1967 presentó una moción de naturaleza de *coram nobis* por el fundamento de que tratándose de un apelante indigente, y no habiendo estado asistido por abogado en el trámite apelativo, procedía dejar sin efecto nuestra sentencia de 5 de junio de 1964. Por

opinión del 15 de febrero de 1968 procedimos a dejar sin efecto nuestra anterior sentencia *per curiam,* y devolvimos los autos para que, conforme a lo dispuesto en la Regla 12.2 de las de Administración del Tribunal de Primera Instancia se procediera a designarle abogado al apelante para que lo asistiera en el trámite apelativo. *Pueblo* v. *Sánchez Vega,* 95 D.P.R. 718 (1968).

Los hechos del caso son los siguientes:

El 13 de agosto de 1962, Urbano Sánchez Vega, el apelante, fue a la casa de Zenón Rivera Cruz y allí amenazó a éste y a toda su familia con acabarlos a todos. Portaba un machete. Motivo de esto era que un hermano de Zenón Rivera Cruz llevaba amores con una hermana del apelante, a lo que éste se oponía. El 14 de agosto, en horas de la noche compró un galón de gasolina y en la madrugada de ese día regó un poco de esa gasolina en una esquina de la casa de Zenón Rivera Cruz y le prendió fuego. Después se retiró a dormir. Con motivo de los sucesos del día 13 se expidió una orden de arresto contra el apelante por los delitos de acometimiento y agresión grave, portación de arma y alteración a la paz, todos de carácter menos grave. Esta orden fue diligenciada de noche, es decir, pocas horas después del incendio, por miembros de la policía, quienes en el mismo acto lo detuvieron para investigación en relación con el incendio perpetrado dos horas antes.

Sometido a juicio, la prueba de cargo consistió de una confesión escrita del acusado presentada ante el juez de paz de Guaynabo y de cierta evidencia circunstancial para establecer que el apelante había tenido un disgusto el día anterior a los hechos que se le imputan con el dueño de la casa incendiada; que luego había comprado un galón de gasolina, y que el recipiente que contenía este líquido inflamable fue encontrado en las inmediaciones de la casa. Además, se admitieron en evidencia varias fotografías que demuestran el daño ocasionado por el incendio.

Sobre la prueba de voluntariedad de la confesión, el tribunal procedió a retirar al jurado para oir prueba sobre esta cuestión. Como la misma fue contradictoria procedió entonces a pasar prueba en presencia del jurado para que fuera éste el que decidiera sobre la voluntariedad de la confesión. (1)

El sargento de la policía, Señor Lugo Merced, testificó que: la policía arrestó al apelante con motivo de tres órdenes de arresto que tenía en su contra por los delitos de acometimiento y agresión grave, portación de armas y alteración de la paz; que esto se llevó a cabo entre las cuatro y media y cinco de la mañana del día 14 de agosto de 1962; que "al arrestarlo, tanto, tan pronto él, nosotros lo arrestamos, lo montamos en el carro, empezamos a hablar y él empezó a decirnos"; que el apelante admitió los hechos "Inmediatamente que lo arrestamos y lo montamos en el vehículo para el traslado al Cuartel General"; que al apelante lo llevaron a la división de la detective y allí fue interrogado en relación con el incendio; que allí llegaron a eso de las ocho de la mañana; el apelante le dijo allí al Sargento Lugo lo siguiente:

". . . él estaba arrepentido de haber hecho lo que había hecho, de haber intentado quemar la casa, porque lo había hecho porque estaba metido en palos y había tenido ciertos problemas con el familiar de la casa y que cada vez que él tomaba ron le daba con quemar, verdad, que él estaba arrepentido, que cualquier cosa que le pudieran ayudar, le ayudaran.

. . . que había comprado un galón de gasolina en el cruce, en un puesto de gasolina que hay en el cruce de Guaynabo hacia Río Piedras, que se lo había llevado para el dormitorio de él, el cuarto de él, el dormitorio, y que a eso de la una o las dos de la mañana se había levantado; que estaba bastante mojada

---

(1) El caso de *Pueblo* v. *Figueroa García*, 91 D.P.R. 729 (1965) donde adoptamos la regla de que corresponde al juez y no al jurado resolver como cuestión de hecho y de derecho si las confesiones hechas por un acusado presentadas como evidencia en el juicio son admisibles, no es de aplicación al caso de autos por cuanto su juicio fue celebrado en 1962.

y había regado la gasolina y le haría [*sic*] tirado un fósforo. Le pregunté que si le había pegado el fósforo bien pegado y me dijo que no, porque la gasolina lo que hacía era que al tirar el fósforo cogía el fuego, que había tirado dos o tres fósforos para encender, que encendió la esquina de la casa."

Sigue declarando el Sargento Lugo que a eso de las nueve y cuarto fue llevado el apelante ante el juez de paz de Guaynabo ante quien dio una declaración escrita en los mismos extremos luego de advertírsele que podía declarar o no declarar y que de hacerlo su declaración podía usarse tanto en su contra como en su favor y que de declarar debía hacerlo espontáneamente, voluntariamente sin que medie coacción u ofrecimiento de parte alguna; que el apelante fue llevado a la división de detectives "porque teníamos que investigar, terminar la investigación que, o sea, teníamos la investigación del incendio con él y lo llevamos para ficharlo y luego pasarlo ante el Magistrado que lo llevamos luego al Magistrado de Guaynabo"; que de la investigación practicada hasta el arresto del apelante, "la investigación me estaba diciendo a mí que la persona era él [el apelante]."

1.—Arguye el apelante que su confesión era inadmisible por ser el producto de un arresto ilegal.

■ Si bien es cierto que el apelante fue arrestado en virtud de tres órdenes de arresto por delitos no relacionados con el de incendio malicioso, no es menos cierto que la prueba demuestra que tan pronto se le arrestó él admitió haber cometido este último delito. De ahí que lo llevaran al Cuartel General para ficharlo y completar la investigación del caso. Dicha confesión oral fue voluntaria y espontánea. Ya para el arresto la policía tenía fundadas sospechas de la culpabilidad del apelante del incendio en cuestión.

■ Bajo las circunstancias de este caso no podemos concluir que hubo una indebida demora en conducir al apelante ante un magistrado. Además, la confesión admitida en evidencia no se obtuvo durante el término de la alegada demora.

La realidad es que la confesión oral dada espontáneamente por el apelante al ser arrestado fue luego ratificada por escrito ante el juez de paz, previa las advertencias entonces requeridas. De manera que al establecerse que esta última se obtuvo voluntariamente no incidió el tribunal de instancia al admitirla en evidencia.

2.—Se apunta que incidió el tribunal al instruir al jurado que "la ley en Puerto Rico para la fecha en que el acusado prestó la alegada confesión no exigía requisito, para que la misma fuera voluntaria y espontánea, el que el acusado en ese momento, el momento de la prestación de la confesión estuviera asistido de abogado."

En apoyo de este apuntamiento cita el apelante a *Johnson* v. *New Jersey*, 384 U.S. 719, 730 (1966), en el cual se dijo que el apelante puede invocar una medida (*test*) substantiva de la voluntariedad de su confesión y que dicha medida ahora toma en consideración el dejar de informar al acusado de su privilegio de no autoincriminarse y el no darle acceso a ayuda de afuera del lugar en que está detenido y sujeto a interrogatorio por la policía.

En *Pueblo* v. *Fournier*, 77 D.P.R. 222, 291 (1954), dijimos que el estar detenido ilegalmente durante tres días sin la oportunidad de consultar a su abogado es uno de varios factores que deben tomarse en consideración por el jurado al pasar sobre la voluntariedad de una confesión.

Más específicamente, se citan a *Davis* v. *North Carolina*, 384 U.S. 737 (1966), y *Clewis* v. *Texas*, 386 U.S. 707 (1967), los que reiteran la norma sobre la necesidad de considerar diversas circunstancias al pasar sobre la voluntariedad de una confesión, entre las cuales se encuentran el no informar al acusado de su derecho a no declarar y a tener la asistencia de abogado al comienzo de su interrogatorio.

La prueba de voluntariedad en este caso fue amplia y suficiente. Por el contrario, ni el fiscal ni la defensa adujeron prueba de la existencia de algunas de las circunstancias que

en los casos antes descritos justificaron concluir que la confesión se prestó involuntariamente. La falta de informar al apelante de su derecho a asistencia de abogado es sólo uno de los muchos factores que, de existir, pueden justificar la conclusión de que una confesión fue prestada involuntariamente.

■ Para la fecha en que se obtuvo la confesión en cuestión no habíamos establecido el requisito de informar a todo acusado de su derecho a asistencia de abogado en etapas anteriores al proceso. El no hacer tal advertencia, como hemos indicado, era sólo uno de muchos factores a considerarse por el jurado al pasar sobre la voluntariedad de una confesión.

3.—Apunta el apelante que el tribunal de instancia incidió al no instruir al jurado sobre la voluntariedad de la confesión del acusado al juez instructor. Arguye que el tribunal debió instruir al jurado que al determinar si la confesión fue voluntaria o no lo fue, debió tomar en consideración los siguientes factores:

a) "La ilegalidad de la detención del acusado por las autoridades policíacas.

b) El hecho de que no existía causa probable para ser detenido por el delito de incendio malicioso.

c) El tiempo por el cual fue detenido para investigación por el delito de incendio malicioso.

d) El hecho de que la policía, cuando investigaba al acusado-apelante no le advirtió del derecho que tenía a no declarar y a tener asistencia de abogado.

e) El hecho de que el juez instructor no le advirtió al acusado-apelante de su derecho a tener asistencia de abogado antes de confesar."
No tiene razón.

■ Ya hemos indicado que el arresto del apelante no fue ilegal y que hubo causa probable para detenerlo por el delito de incendio malicioso pues antes del arresto la policía había

relacionado al apelante con el incendio en cuestión. También ya dijimos que no hubo demora indebida en llevar al apelante ante un magistrado. El apelante admitió los hechos relacionados con su comisión del delito de incendio malicioso tan pronto se le arrestó, y esto lo ratificó el apelante por escrito ante un magistrado luego de recibir las advertencias que entonces se exigían por ley.

4.—Sostiene el apelante que la confesión prestada ante el juez de paz fue hecha ante un magistrado con funciones judiciales; que dicha función (la de determinar causa probable para arrestar y fijar fianza) es similar a la función de la vista preliminar del Estado de Maryland ya que esa función en Puerto Rico servía de base para que el fiscal radicara acusación. Invoca los casos de *White* v. *Maryland*, 373 U.S. 59 (1963); *Hamilton* v. *Alabama*, 368 U.S. 52 (1961) y *Massiah* v. *Alabama*, 377 U.S. 201 (1964), en donde se sostuvo el derecho de abogado en ciertas etapas de procedimiento criminal. No tiene razón. La función del juez de paz en un caso como el de autos es la de determinar causa probable para arrestar y fijar fianza. Si bien es cierto que en la actualidad y conforme a las Reglas 4, 22 y 23 de las de Procedimiento Criminal, un acusado puede exigir que se le permita asistencia legal desde el momento mismo del arresto (conforme a *Rivera Escuté*, 92 D.P.R. 765 (1965) desde que "la investigación toma el cariz de acusatoria y se posa sobre un sospechoso en particular con miras a sacarle una confesión"), sin embargo, para la fecha de los hechos de este caso, un acusado no tenía tal derecho, aunque habíamos resuelto que si la ausencia de abogado en una etapa anterior a su proceso creaba una situación tal que trasladada al juicio impedía un proceso justo e imparcial, la convicción no podía prevalecer. *Rivera Escuté* v. *Delgado*, 80 D.P.R. 830 (1958). No obstante no le habíamos reconocido a un acusado para esa época, como cuestión de ley positiva o como cuestión

constitucional, el derecho a asistencia legal en etapas anteriores a su proceso.

◾ Este Tribunal ha garantizado desde hace mucho tiempo, el derecho de asistencia de abogado en el acto de lectura de la acusación, que fue lo que resolvió *Hamilton*, supra, en 1961. Los casos de *Massiah* y *White*, supra, envuelven la confesión sin asistencia de abogado después de haberse presentado acusación, o sea, después de estar el acusado ya bajo el poder judicial para un juicio. En el caso de autos la confesión se produjo en la etapa investigativa ante un juez de paz y de acuerdo con la ley vigente en ese momento no tenía derecho a estar asistido de abogado. Tampoco se nos ha demostrado que la ausencia de un abogado le creó una situación tal que impidiera un juicio justo e imparcial. *Rivera Escuté*, supra.

◾ En cuanto a la contención de que en Puerto Rico siempre ha existido una vista preliminar al estilo de la de Maryland, en *Rivera Escuté*, supra, hicimos un detallado estudio sobre el Art. 44 del Código de Enjuiciamiento Criminal de Puerto Rico. Antes de entrar en vigor la Regla 23 de las de Procedimiento Criminal no existía en Puerto Rico "la vista preliminar." *Soto Ramos* v. *Supert. Granja Penal*, 90 D.P.R. 731 (1964).

5.—Apunta el apelante que el tribunal sentenciador incidió al no instruir al jurado sobre el efecto de la embriaguez y la responsabilidad criminal del acusado. Tiene razón.

Dispone el Art. 41 del Código Penal—33 L.P.R.A. sec. 87—que "Ningún acto cometido por una persona en estado de voluntaria embriaguez es menos criminal por haberse cometido en tal estado. Pero siempre que la existencia real de algún fin, motivo o intento determinado fuere elemento indispensable para constituir alguna clase o grado de delito especial, el jurado podrá tomar en consideración el hecho de

que el acusado se hallaba entonces ebrio, al determinar el fin, motivo o intento con que se cometió el acto."

La regla adoptada en aquellas jurisdicciones donde prevalecen disposiciones de ley idénticas o similares a la contenida en el Art. 41 de nuestro Código Penal es que la embriaguez voluntaria tiene que ser de tal grado o carácter que inhiba en el acusado su facultad mental para formar la intención específica requerida por el Código para la convicción de un delito o grado del mismo en el cual se requiere tal intención específica y que la determinación de ese hecho es esencialmente una para el jurado o la corte juzgadora. *Pueblo* v. *Rivera*, 70 D.P.R. 570, 573 (1949).

El Art. 398 de nuestro Código Penal—33 L.P.R.A. sec. 1561—requiere de manera expresa que para que se cometa el delito de incendio malicioso es necesario que éste se realice con la intención de destruir un edificio. *Pueblo* v. *Rodríguez López*, 96 D.P.R. 690 (1968). De suerte, pues, que en este delito la intención desempeña un papel de importancia, la determinación de cuya existencia debe dejarse enteramente al juzgador de los hechos, que en este caso lo era el jurado que conocía del caso. *Pueblo* v. *Rosado*, 78 D.P.R. 436 (1955). Consta de los autos que el apelante solicitó una instrucción sobre embriaguez y ésta fue denegada de plano por el juez de instancia. Una instrucción de embriaguez debe ser transmitida al jurado cuando ante éste ha desfilado prueba tendiente a demostrar la intoxicación del acusado al tiempo de cometer el delito y antes de ello.[2] El no haber dejado el juez sentenciador a la determinación del jurado si el acu-

---

[2] En su confesión, el acusado manifiesta que el día de los hechos estaba metido en palos, que siguió dándose palos y como a las 10:30 P.M. compró la gasolina sin recordar dónde la compró porque cuando está metido en palos se le olvidan las cosas; que quemó la casa por estar metido en palos y le dio un impulso malo; que cuando no está metido en palos es un hombre de trabajo. El policía Lugo declaró también que el acusado en su declaración en el cuartel de la policía le dijo estar metido en palos.

sado en este caso estaba embriagado a tal extremo que era incapaz de formar o de abrigar la intención de destruir el edificio al pegarle fuego, fue un error cuya comisión da lugar a la revocación. *Pueblo* v. *Rosado,* supra; *Pueblo* v. *Pacheco Betancourt,* 92 D.P.R. 698 (1965); *Pueblo* v. *Soriano Rodríguez,* 92 D.P.R. 46 (1965); *Pueblo* v. *Andrades González,* 83 D.P.R. 849 (1961); *Pueblo* v. *Febres,* 78 D.P.R. 893 (1956); y *Pueblo* v. *Rivera,* supra.

*En vista de lo expuesto, se debe revocar la sentencia dictada en este caso y devolverse el caso para la celebración de un nuevo juicio.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Blanco Lugo no intervinieron. El Juez Asociado Señor Santana Becerra concurre en el resultado.