EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ MANUEL DELGADO LAFUENTE, acusado y apelante.

*Número:* CR-68-120      *Resuelto:* 8 de mayo de 1969

*Santos P. Amadeo,* abogado del apelante; *Rafael A. Rivera Cruz, Procurador General, J. F. Rodríguez Rivera, Subprocurador*

*General*, y *Juan José Ríos Martínez, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El 6 de septiembre de 1967 un jurado, por mayoría de 10 a 2, declaró al apelante culpable del delito de tentativa de robo. Contra la sentencia de 3 a 7 años de presidio interpuso el presente recurso de apelación señalando la comisión de cinco errores.

■ Por el primero sostiene que el veredicto es nulo por no haber sido rendido por unanimidad según lo requiere la Enmienda Sexta a la Constitución de los Estados Unidos, a la luz de los casos de *Reid* v. *Covert*, 354 U.S. 1; *Duncan* v. *Louisiana*, 391 U.S. 145 (1968) ; *Thompson* v. *Utah*, 170 U.S. 343; *American Publishing Co.* v. *Fisher*, 166 U.S. 464 y *Reynolds* v. *United States*, 98 U.S. 145.

■ De ser aplicable a Puerto Rico la doctrina invocada por el apelante, cuestión que no estamos resolviendo, la misma no estaría disponible para el apelante. *DeStefano* v. *Woods*, 392 U.S. 631, resuelto en junio 17 de 1968; *Pueblo* v. *Cruz Morales*, 96 D.P.R. 666 (1968) ; *Pueblo* v. *Morales*, Sentencia de 24 de octubre de 1968. El primer error no fue cometido ni tampoco el segundo. Por éste se ataca la instrucción sobre la fuga del acusado del lugar de los hechos. Aparte de que el apelante no objetó la aludida instrucción ni solicitó alguna instrucción especial, por lo que resulta tardío su planteamiento—*Pueblo* v. *del Valle*, 91 D.P.R. 174 (1964)— tanto la prueba de cargo como la de defensa daban margen a que se transmitiera al jurado la instrucción sobre fuga en la forma que lo hizo el juez. El perjudicado declaró que cuando el acusado le puso algo en la espalda cambió rápido y trató de defenderse con un sable y ahí el acusado lo hirió y se fue a correr. El propio acusado declaró que se fue corriendo y dejó su carro. Antes de transmitir la instrucción sobre fuga el juez dijo al jurado: "Ustedes recordarán en la prueba, el testimonio del señor perjudicado en este caso surge la

circunstancia que luego, según él, de tratarse por el acusado de obtener el dinero que él tenía y él ofrece [*sic*] cierta resistencia con el machete y resulta herido el acusado . . . se ausentó de aquel sitio en determinada forma; si ustedes creen esa prueba y la creen más allá de toda duda razonable y creen que en la forma que se ausentó el acusado de allí es una fuga, deben tomar en consideración esta instrucción." La instrucción que siguió sobre fuga es correcta. *Pueblo* v. *Vega Santos*, 88 D.P.R. 272 (1963). De suerte que el juez dejó al jurado la determinación, fuera de toda duda razonable, si la forma en que el acusado se ausentó del sitio de los hechos constituía una fuga. Según hemos dicho ya los hechos justificaban la instrucción.

■ El tribunal no instruyó al jurado, como alega el apelante en su tercer señalamiento de error, que en el delito de tentativa de robo la intención específica no es un elemento de dicho delito. Para definir el delito de tentativa de robo era imprescindible definir primero el delito de robo. Al definir este delito fue que el juez dijo que la intención específica no era un elemento del mismo. Eso es correcto. *Pueblo* v. *Betancourt*, 66 D.P.R. 132, 134 (1946). El magistrado instruyó al jurado que para declarar culpable al acusado del delito que se le imputaba, debían llegar "a la conclusión más allá de duda razonable, que en el sitio y fecha que se hace referencia en la acusación este acusado intentó cometer el delito de robo en la persona de Gerardo Valentín Rivera, . . . ." También les instruyó que si creían que el acusado no intentó cometer el delito de robo o si tenían duda razonable sobre si intentó o no cometer dicho delito, debían absolverlo.

El Código Penal no define el delito de tentativa de robo. En su Art. 50 provee una penalidad por tentativa de cometer un delito. Dispone al efecto dicho artículo que a todo el que intentare cometer un delito, sin lograr realizarlo, o que fuere impedido o interceptado en la perpetración del mismo, y la

ley no hubiere señalado la pena correspondiente a tal tentativa, se le castigará en la forma que expresa el propio artículo.

■ En los delitos en grado de tentativa el acusado debe (1) con la intención de cometer un delito específico, (2) realizar un acto ostensible (*overt act*) dirigido a su comisión que vaya más allá de una mera preparación y aparentemente sea adecuado a tal propósito, pero (3) que la comisión del delito intentado fracasa. Wharton's *Criminal Law and Procedure*, 12th Edition, sec. 71; *People* v. *Buffam*, 40 C.2d 709; *People* v. *Anderson*, 1 C.2d 687; *People* v. *Gallardo*, 41 C.2d 57.

La instrucción transmitida en este caso cumple sustancialmente con el estatuto.

■ Se señala como cuarto error la omisión de transmitir al jurado una instrucción en el sentido de que el estado de embriaguez del acusado podía exonerarle del delito que se le imputaba.

Aparte de que el acusado no solicitó la indicada instrucción, la embriaguez a que se refiere el Art. 41 del Código Penal (33 L.P.R.A. sec. 87), al efecto de que siempre que la existencia real de algún fin, motivo o intento determinado fuere elemento indispensable para constituir alguna clase o grado de delito especial, el jurado podrá tomar en consideración el hecho de que el acusado se hallaba entonces ebrio, al determinar el fin, motivo o intento con que se cometió el acto, debe ser de tal naturaleza que incapacite al procesado para formar o concebir el propósito, la intención, o la malicia que según la ley sea elemento o ingrediente indispensable del delito imputádole. *Pueblo* v. *Febres*, 78 D.P.R. 893 (1956); *Pueblo* v. *Rosado*, 78 D.P.R. 436 (1955). En cuanto a la prueba de embriaguez sólo hay en el récord el testimonio del acusado al efecto de que había tomado licor, bastantes tragos. No estableció pues la prueba la embriaguez a que se refiere el citado Art. 41 del Código Penal. El testimonio del propio acusado revela que en la madrugada de la ocurrencia de los

hechos no se encontraba en el estado de embriaguez que contempla la ley. Cf. *Pueblo* v. *Sánchez Vega*, 97 D.P.R. 133 (1969).

■ Finalmente el apelante ataca la suficiencia de la prueba. Según la resume correctamente el Procurador General, es la siguiente:

". . . Como prueba del Pueblo declaró Gerardo Valentín Rivera que en la noche del 25 de junio de 1967 trabajaba en el puesto de gasolina Shell, ubicado en la calle Concordia, esquina Bolivia, en calidad de vendedor o guardián. El apelante fue y le pidió gasolina para echarle a un automóvil que se le había quedado en un lugar cercano. Le preguntó si había traído envase, contestándole el apelante en la negativa. El declarante se dirigió a la parte de atrás del negocio a buscar una lata para echarle gasolina y por el camino el acusado le puso una cosa por la espalda y le dijo que le diera el dinero que tenía encima. Con un sable que tenía el declarante en las manos, se defendió, cortó al apelante y éste se fue a correr. (T.E. págs. 7–10, 19–21.)

Randolph Zambrana declaró que es agente especial de la detective. (T.E. pág. 27.) Investigó los hechos del caso y se entrevistó con el apelante en el Centro Médico, el cual mostraba unas heridas en la mano izquierda. (T.E. pág. 28.)

Como prueba de defensa declaró el propio acusado, explicando que ese día salió del trabajo por la tarde y se dirigió a su casa, luego se fue al Barrio Obrero a pagar un dinero que debía. Más tarde fue a un negocio donde tomó unas cervezas. Al regresar, se quedó su automóvil sin gasolina y le empujó hasta cerca de un garaje, le preguntó a Valentín si podía darle un poco de gasolina, preguntándole éste si había traído envase y le contestó el declarante en la negativa. Valentín dijo que iba a ver si conseguía algo en qué echarla y el declarante se fue a su lado. Cuando Valentín buscaba la lata, el declarante fue a buscar el dinero para pagar y tocó a Valentín. Acto seguido éste le puso un machete en el cuerpo, demostrando en el tribunal la forma en que le puso el machete, y lo cortó en una mano. Cuando iba hacia la calle huyendo, se desmayó, cayendo al piso. (T.E. págs. 35–37, 40–41.) Dejó el automóvil y no le dijo nada al detective Zambrana sobre el hecho que había dejado un automóvil cerca del garaje de gasolina.

Como prueba de refutación, el fiscal ofreció el testimonio de Randolph Zambrana, quien declaró que al entrevistar al apelante la noche de los hechos éste le declaró que había sido cortado, sin mencionar la forma en que lo había sido. No le declaró sobre el garaje de gasolina, ni que su automóvil se había quedado sin gasolina." (Informe Procurador General, págs. 15 y 16.)

El testimonio del perjudicado es terminante en cuanto a la identificación del acusado.

*Debe confirmarse la sentencia apelada.*