EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LUIS VALENTÍN ACEVEDO, acusado y apelante.

*Número:* CR-68-142    *Resuelto:* 8 de mayo de 1969

*José Veray, Jr.,* abogado del apelante; *Rafael A. Rivera Cruz, Procurador General, Peter Ortiz, Subprocurador General Interino,* y *Lydia Nieves Franqui, Procuradora General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Convicto por un jurado de dos cargos de ataque para cometer asesinato, y de conducir un vehículo en estado de embriaguez y sin licencia (Art. 218 del Código Penal y Secs. 5-801 y 3-301 Ley de Vehículos y Tránsito— 33 L.P.R.A. sec. 732; 9 L.P.R.A. secs. 1041 y 721), el apelante fue condenado a una pena de 10 a 15 años de presidio en cada uno de los delitos graves y a una pena de cárcel por el delito de manejar en estado de embriaguez debido al agravante de reincidencia. Desde diciembre de 1965 se le había suspendido permanentemente su licencia de conductor.

Apunta el apelante que:

(1) Los veredictos rendidos por el jurado son contrarios a la prueba presentada.

(2) No hubo prueba suficiente para sostener que el apelante era culpable de conducir el vehículo de motor en estado de embriaguez.

(3) Las penas de presidio eran excesivas pues no hubo prueba de agravantes y

(4) Constituyó error el denegar la petición de nuevo juicio en las tres causas apeladas.

El testimonio de los testigos presenciales demostró que durante la noche y hasta la hora en que ocurrieron los hechos pasó el apelante unas cuatro veces por la carretera frente

a la tienda de Mislael Matías Pérez, en el barrio Borinquen de Aguadilla, conduciendo un vehículo Chevrolet; cada vez que pasaba paraba y profería insultos y palabras obscenas, bien desde el vehículo o luego de bajarse del mismo. En unas de estas ocasiones comenzó a orinar frente a la tienda en la cual se encontraban Mislael Matías Pérez, su esposa, sus padres y dos hermanos quienes en ese momento se ocupaban de recoger y cerrar el negocio. Mientras orinaba continuaba profiriendo insultos y palabras obscenas desafiando a que lo interrumpieran de orinar o a que lo matasen. Mientras se encontraban fuera de las puertas del negocio Mislael y su esposa, Víctor Manuel Matías Pérez y al lado suyo su mamá y al otro su padre y su hermano Vidal, el apelante quien en ese momento había parado como a 120 pies de la tienda, súbitamente comenzó a mover el vehículo en reversa a gran velocidad hacia donde se encontraban dichas personas. El propio apelante testificó que al retroceder venía mirando hacia atrás. Dichas personas no se movieron porque "nunca pensamos que nos iba a tirar el carro encima a nosotros." Ya muy tarde, al darse cuenta, Vidal empujó a su hermano y a sus padres para evitar que fueran atropellados pero él no pudo escapar. Con motivo de ser atrapado por el vehículo contra la pared de la tienda, sufrió graves lesiones que lo hospitalizaron durante varios meses, inclusive la fractura de la pelvis, perforación de la vejiga y la uretra, con hemorragia interna grande y parálisis de un pie debido a lesión del nervio principal de la pierna. Sufre de dificultad en orinar y de una deformidad de la cadera.

La testigo Marta Rivera, esposa de Mislael, testificó que el apelante "Parecía borracho del modo que hablaba y la forma que guiaba el carro. . . . Por las palabras que hablaba. . . . Hablaba sucio y se conocía que estaba tomado. . . . El pasaba en el carro de un lado para otro dando zigzags en la carretera. . . . El se salía del sitio en que estaba en vez de siguir derecho, se salía de la derecha." El lesionado

Víctor Manuel Matías Pérez testificó que no le hicieron caso a las ofensas que profería el apelante porque "ya lo conocíamos. El está acostumbrado a hacer eso"; que el apelante manejaba el vehículo "dando zig-zags y ligeramente"; que estaba borracho "En la forma de conducir y el hablar"; que hablaba "Como si estuviera borracho . . ."; que le notó que "Era sucio y eso" en el hablar. Vidal Matías Pérez testificó que al apelante dirigía sus insultos a él; que no hizo nada "Porque yo lo conocía, él estaba borracho" refiriéndose al apelante, debido a "La forma en que hablaba. . . . Vulgarmente, palabras sucias. Diciéndonos hijos de la gran p. . . . Después salió del carro y se puso a orinar" a la vista de señoras presentes, y a desafiar a la gente; que guiaba dando tumbos. Aunque pudo escapar de ser atropellado por el vehículo del apelante se lesionó una mano al chocar el vehículo del apelante contra la pared de la tienda al mismo tiempo que su hermano Víctor era atropellado y lesionado.

Al ver herido a Víctor, Mislael entró al negocio, tomó un revólver para dispararle al apelante pero su mujer le hizo desviar el arma y uno de los disparos hirió al padre de aquél. Tan pronto ocurrió el choque el apelante salió corriendo pero algunos lo agolpearon y le quitaron la camisa.

El apelante testificó que la noche de los hechos él fue a visitar un señor que vivía cerca del negocio de Mislael Matías en relación a un asunto de negocio. Dejó estacionado su automóvil frente a la tienda de Mislael. Al regresar "no tenía por donde salir . . . entonces tuve que dar un poco para atrás . . . y agolpié a un nene como de 14 ó 20 años." Aunque miraba hacia atrás no lo vio. Trató de bajarse y todos le golpearon, destrozándole su ropa. Estuvo en el hospital durante veinticinco días. Negó que hubiese parado para orinar. A preguntas del fiscal, declaró que no acudió a las autoridades a presentar denuncia por los golpes recibidos; que para esa fecha no tenía licencia de conducir porque se

la habían cancelado al ser declarado culpable de un delito de conducir en estado de embriaguez, en grado de reincidencia.

Se admitieron varias fotografías del lugar de los hechos y del vehículo del apelante demostrativas éstas de que había sufrido con motivo del choque contra la tienda en cuestión, abolladuras por el lado izquierdo sobre el parachoque posterior más la rotura del pequeño foco a la extrema izquierda de los cuatro con que está equipado el vehículo sobre dicho parachoque.

El tribunal de instancia instruyó al jurado, sin objeción o solicitud de instrucción especial de ninguna de las partes, "dentro de esta clasificación por delito de ataque con intención de cometer asesinato cabe un veredicto de ataque con intención de cometer homicidio . . . también un veredicto . . . por el delito de acometimiento y agresión, siempre también que la prueba lo justifique." Se instruyó amplia y correctamente sobre cada uno de estos delitos, sobre malicia premeditada en relación con el delito de ataque para cometer asesinato, y las circunstancias bajo las cuales el jurado podía considerar al apelante culpable de cada uno de dichos delitos y de su deber de absolverlo en caso de existir duda razonable sobre su culpabilidad.

Arguye el apelante que de la prueba no surge la intención premeditada de matar ni se estableció que el apelante guiaba bajo los efectos de bebidas embriagantes, que asumiendo que se encontraba en estado de embriaguez no podía forjar en su mente la intención de matar; que la prueba más bien hubiera justificado un veredicto de acometimiento y agresión (grave o simple); que más bien tendió a imputar al apelante una infracción a la Sec. 5-201 y a la Sec. 5-505 de la Ley de Vehículos y Tránsito. Indica que las penas son excesivas y que por esos fundamentos incidió el tribunal de instancia al denegar la moción de nuevo juicio. No tiene razón.

■ Dijimos en *Pueblo* v. *Méndez*, 74 D.P.R. 913 (1953), que

"El concepto de malicia premeditada implica la ausencia de justa causa o excusa al ocasionar la muerte e implica además la existencia de la intención de ocasionar la muerte de un semejante.

Esa intención se puede manifestar a través de uno de los dos siguientes elementos, cualquiera de los cuales es suficiente para determinar la existencia de malicia premeditada, a saber, (a) la intención específica de matar, considerada como equivalente al deseo y propósito directo, explícito y definido de matar, o sea, precisamente formulado con el objetivo directo de matar [cita], o, (b) con la intención de realizar un acto o de producir grave daño corporal cuya consecuencia probable sea la muerte de una persona. . . ."

■ Con respecto al estado de embriaguez del apelante y si el mismo le impidió "forjar en su mente la intención de matar" de acuerdo con lo dispuesto en el Art. 41 del Código Penal—33 L.P.R.A. sec. 87—surge la cuestión no planteada por el apelante, de si hubo prueba de embriaguez suficiente que requiriese una instrucción de acuerdo a lo dispuesto en el Art. 41 *supra*, según dictaminamos en *Pueblo* v. *Delgado Lafuente*, 97 D.P.R. 266 (1969); en *Pueblo* v. *Sánchez Vega*, 97 D.P.R. 133 (1969); y en *Pueblo* v. *Tufiño Cruz*, 96 D.P.R. 225 (1968). Creemos que no. Aunque la prueba del fiscal justificó la conclusión del tribunal de instancia de que el apelante manejaba el vehículo en estado de embriaguez la misma no era suficiente, como no lo era en *Delgado Lafuente*, supra, para justificar que se encontraba en el estado de embriaguez que contempla el referido Art. 41 del Código Penal, máxime cuando el propio apelante testificó sobre los hechos que dieron lugar al proceso en su contra y explicó cómo fue que vino a hacer retroceder su vehículo y cómo atrapó "a un nene de 14 a 20 años", demostrando así que no podía encontrarse en el estado de embriaguez que justificase al jurado concluir que lo había inca-

pacitado para formar o concebir la intención o malicia indispensable del delito imputádole y que por la tanto requiriese la correspondiente instrucción.

■ Bajo las circunstancias del caso no estamos justificados en intervenir con la discreción del tribunal de instancia en fijar el término de las penas y el negar la concesión de un nuevo juicio.

*Por lo tanto, se confirmarán las sentencias dictadas en este caso por el Tribunal Superior, Sala de Aguadilla, en 24 de noviembre de 1967.*

Los Jueces Asociados Señores Hernández Matos y Santana Becerra no intervinieron. El Juez Asociado Señor Dávila concurre en el resultado.