El Pueblo de Puerto Rico, apelado, *v.* Ramón L. Rivera Rodríguez, apelante.

*Número:* CR-88-22          *Resuelto:* 29 de junio de 1992

*Rafael Ortiz Carrión, Procurador General, Miriam Álvarez Archilla, Procuradora General Auxiliar,* y *Norma Cotti Cruz, Subprocuradora General,* abogados de El Pueblo; *Federico Torres Jiménez,* abogado del apelante.

## SENTENCIA

Luego de un juicio por tribunal de derecho, el acusado apelante Ramón L. Rivera Rodríguez fue declarado culpable del delito de homicidio involuntario al conducir negligentemente un vehículo de motor. Art. 86 del Código Penal, 33 L.P.R.A. sec. 4005. Fue sentenciado con pena de reclusión por el término de un (1) año y tres (3) meses, concediéndosele los beneficios de sentencia suspendida.

No conforme, apeló planteando como único error el siguiente:

> Erró el Honorable Tribunal Superior en su apreciación y evaluación de la prueba, habida cuenta de que ésta no establece la culpabilidad del acusado más allá de toda duda razonable y fundada. En síntesis, la evidencia testifical estableció que al momento de la ocurrencia del accidente, el apelante conducía su vehículo a una velocidad razonable, cuando súbitamente, saliendo entre vehículos, una persona en marcado estado de embriaguez (veintiséis (26) centésimas del uno por ciento (1%) de alcohol en la sangre), irrumpió en la vía de rodaje, lo que imposibilitó la reducción de la velocidad y/o detención del vehículo para evitar atropellarle. Entendemos que los hechos de este asunto guardan marcada similitud con los que dieron margen a la opinión de *Pueblo* v. *Pérez*, 79 D.P.R. 487 y a la de *Pueblo* v. *Ortiz Morales*, 86 D.P.R. 456, cuyos precedentes apoyan la tesis del apelante de que el accidente fue uno inevitable y no un accidente de negligencia criminal.

El Ministerio Público presentó como testigos de cargo a los señores Julio Santiago Bracero, Melvin Torres Cordero y al agente José W. Soto. Se estipuló el testimonio de la patóloga Dra. Ofelia G. Vega. La defensa no presentó prueba con relación al caso de homicidio involuntario.

De la exposición narrativa de la prueba surge que el testigo Santiago Bracero declaró que en la noche en que ocurrieron los hechos fue al negocio llamado El Flamboyán, en la Avenida Las Cumbres de la Urbanización Rexville en Bayamón, a comprar dos (2) cervezas y comida de perro. Estacionó su vehículo en el carril derecho de dicha avenida frente al negocio. La avenida es ancha de cuatro (4) carriles no marcados, dos (2) en cada dirección, separados por una isleta ancha. La iluminación en ese lugar no es muy buena debido a que las luces del alumbrado público están por encima de un árbol de flamboyán. Ese día frente al negocio había luces que alumbraban.

Había dos (2) o tres (3) vehículos estacionados frente al negocio. Fuera del negocio varias personas estaban tomando. Cuando fue a pagar las dos (2) cervezas y la comida de perro, sintió un frenazo sólido, fuerte, corto. Al escuchar el frenazo, inmediatamente que sintió el golpe bastante fuerte, salió afuera del negocio. Fue a la acera, se asomó y vio el cuerpo del occiso Roberto Pascual Arocho tirado en la isleta, la que separa ambos carriles.

Continuó declarando que el cuerpo de la víctima, Pascual Arocho, estaba como a unos sesenta (60) a setenta (70) pies de la isleta. Pascual Arocho poco antes había estado bebiendo, estaba "alegre, borracho, metido en tragos". Sin embargo, no se tambaleaba ni lo ayudaban a caminar. Lo vio conversando con otras personas. Dentro del negocio lo vio bebiendo cervezas. Vio cuando la víctima cruzaba la acera por detrás de su carro. Instantáneamente escuchó un frenazo fuerte, sólido y un golpe sólido. Creyó que habían chocado su carro. Al sentir el golpe, salió inmediatamente afuera del negocio y vio el cuerpo tirado en la isleta.

Pudo observar, además, a un carro blanco que iba doblando por la curva que está como a doscientos (200) metros. Era un Toyota blanco e iba como a cuarenta (40) millas. No sabe a qué velocidad venía al ocurrir el accidente, pues no lo vio antes del cantazo. Al momento del accidente no transitaban vehículos por la avenida. Describió la avenida como recta por doscientos (200) metros antes de llegar al negocio.

El próximo testigo del Ministerio Público fue el estudiante Torres Cordero, quien se encontraba en el vehículo con el acusado apelante cuando ocurrió el accidente. Declaró que iban como a treinta (30) millas por el carril de la derecha, pero que como había varios vehículos estacionados frente al negocio, cambiaron al carril de la izquierda. Cuando iban frente al negocio, de repente una persona salió de entre los vehículos allí estacionados, recorrió "lo que mide el Toyota en la parte del frente, unos cuatro y medio (4 1/2) pies, y ahí ocurre el impacto". La víctima estaba entonces como a tres (3) pies de la isleta. El impacto fue por el lado izquierdo del frente del vehículo. La secuencia de eventos según la relata este joven fue bien rápida. "De repente vio un hombre que salió frente al carril de ellos. Frenaron y ahí mismo el cantazo. El hombre iba a terminar de cruzar. Ya iba a treparse a la isleta. Estaba como a tres (3) pies de la isleta. Vio la persona casi al momento de impactarlo".

Continuó testificando que luego del accidente no se detuvieron, porque se pusieron bien nerviosos gritando y llorando. Fueron a casa del acusado Rivera Rodríguez. Allí estaba el cuñado de éste, quien era policía. Le dijeron lo que había ocurrido, luego de lo cual fueron a buscar al padre del acusado para entregarse.

El último testigo fue el agente Soto. Éste, en síntesis, declaró que al llegar al lugar de los hechos, midió un frenazo que se veía reciente, desde unas manchas de sangre hasta donde estaba el cuerpo. "El frenazo se encontraba a

dos (2) [o] tres (3) pies del carril izquierdo hacia el área verde. Desde las manchas de sangre hasta el cuerpo tomó una medida de ochenta y dos (82) pies." No se corroboró que las manchas de sangre correspondieran a la sangre de la víctima ni se hizo análisis alguno para corroborar que las huellas del frenazo concordaran con los neumáticos del vehículo que conducía el acusado.

Del informe de autopsia que fue estipulado surge que la causa de la muerte fue un "severo trauma cráneo-cerebral" y que al momento del accidente la víctima tenía "intoxicación alcohólica aguda", 0.26% alcohol/peso.[1]

La propia prueba presentada por el Ministerio Público avala la posición del acusado apelante de que el accidente ocurrió debido a que la víctima Pascual Arocho, en estado de intoxicación aguda, súbitamente irrumpió en la vía de rodaje imposibilitando el que el acusado apelante pudiese evitar impactarlo. Veamos.

El primer testigo de cargo, el señor Santiago Bracero, describió la serie de eventos que condujeron al trágico accidente como sucediendo en rápida secuencia. Vio a la víc-

---

[1] Del informe médico-forense surge lo siguiente:
"*ANALISIS TOXICOLOGICO*:
"Cifra de alcohol en sangre: Contiene 0.26% alcohol/peso.
"*SUMARIO DIAGNOSTICO*:
1. Severo trauma cerebral que produce:
"a. Fractura de la base del cráneo.
"b. Contusiones cerebrales con laceración incompleta del mesencéfalo.
"c. Hemorragia subaracnoidea.
"d. Hemorragia subdural en la base del cráneo.
"e. Hematoma epicraneal en región frontal derecha.
"f. Hematoma en músculo temporal derecho.
"g. Contusiones y laceraciones en cabeza y cara.
"2. Trauma corporal que produce:
"a. Contusiones pulmonares, en hígado, brazo, riñón derecho y mesenterio.
"b. Fractura de la 4ta costilla derecha, de ulnar y radial izquierdo y desarticulación de la rodilla derecha.
"3. Hígado con ligeros cambios grasos.
"4. Intoxicación alcohólica aguda.
"*Causa de la muerte*: Severo trauma cráneo-cerebral
"*Manera de muerte*: Accidente de tránsito."

tima cruzando por detrás de su carro e "[i]nstantáneamente escuchó un frenazo fuerte, sólido y un golpe sólido". Esto corrobora en parte el testimonio del único testigo ocular, el estudiante Torres Cordero que viajaba con el acusado al ocurrir el accidente. Éste atestiguó que de repente vio un hombre salir de entre dos (2) vehículos que había estacionados frente al negocio. Al señor, a penas le dio tiempo a cruzar la mitad del vehículo, cuando ocurrió el frenazo y el impacto casi en forma simultánea.

Con respecto al concepto de duda razonable, hemos expresado que esto no significa "que toda duda posible tenga que ser destruida y 'que la culpabilidad del acusado tenga que establecerse con certeza matemática, sino que la evidencia' establezca 'aquella certeza moral que convence, dirige la inteligencia y la razón. Duda razonable es una duda fundada, producto del raciocinio de todos los elementos de juicio envueltos en el caso' ". *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 761 (1985).

El Ministerio Público no cumplió con el requisito de presentar prueba que, " 'además de suficiente [fuere] … *satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación' o en un ánimo no prevenido*". (Énfasis suplido y en el original.) *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 652 (1986). Véase *Pueblo v. Carrasquillo Carrasquillo*, 102 D.P.R. 545, 552 (1974). La prueba de cargo no demostró que hubiese negligencia criminal y que ésta fuese la causa próxima del accidente que le ocasionó la muerte a Roberto Pascual Arocho.

A tenor con lo dispuesto en el Art. 16 del Código Penal, 33 L.P.R.A. sec. 3063, "[r]esponde por negligencia la persona que ha producido un resultado delictuoso sin quererlo, por imprudencia o descuido, o falta de circunspección o impericia o por inobservancia de la ley". Los hechos según surgen de la exposición narrativa de la prueba no demuestran que el acusado apelante hubiese actuado con imprudencia, falta de circunspección o impericia. Tampoco se

aportó prueba de que éste no observara la ley. No se probó la negligencia criminal.

La forma en que la víctima, Pascual Arocho, intoxicado, irrumpió en la avenida en el momento en que el vehículo conducido por el acusado apelante Rivera Rodríguez discurría frente al negocio El Flamboyán, nos convence de que se trata de un accidente inevitable, no de un caso de negligencia criminal.

Por todo lo antes expuesto, *se dicta sentencia revocando la apelada y se absuelve al acusado.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Negrón García. El Juez Asociado Señor Fuster Berlingeri no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente emitida por el Juez Asociado Señor Francisco Rebollo López, a la cual se une el Juez Asociado Señor Negrón García.

Nos vemos imposibilitados de refrendar la Sentencia mayoritaria emitida por el Tribunal mediante la cual se revoca la convicción que por el delito de homicidio involuntario decretara, en juicio celebrado por tribunal de derecho, el Tribunal Superior de Puerto Rico, Sala de Bayamón. Ello, llana y sencillamente, debido a que somos del criterio que el Estado demostró, más allá de duda razonable, que la muerte por la cual se acusó al apelante se debió a la negligencia criminal de éste, según requerido por el Art. 86 del vigente Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4005.

En primer lugar, el accidente ocurrió en la zona urbana,

donde la velocidad permitida es una máxima de veinticinco *(25) millas por hora.* Art. 3(b)(3) de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 841(b)(3). Conforme declaró el *acompañante* del apelante Ramón Rivera Martínez, el testigo Melvin Torres Cordero, el apelante conducía el vehículo de motor a una velocidad aproximada de *treinta (30) millas*; esto es, *sobre el límite permitido.*

Ello, sin embargo, *no* es todo. De la prueba presentada *razonablemente se puede inferir* que la velocidad a la que discurría el apelante era una que *no* le permitía mantener *el control y dominio del vehículo* que conducía. Art. 3(a) de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 841(a). Ello así surge del hecho que en el lugar de los hechos la Policía "tomó una medida de ochenta y dos (82) pies", correspondiente la misma al frenazo en que incurrió el vehículo en controversia. Esto es, el vehículo transcurrió ochenta y dos (82) pies desde *el punto* en que, por primera vez, el apelante se percató de la presencia del peatón —y aplicó los frenos— hasta *el punto* en que ocurrió el impacto del carro y el peatón. Ello constituye prueba irrefutable de que si el apelante hubiera estado conduciendo el vehículo a una velocidad menor —lo que le hubiera permitido mantener el control y dominio de dicho vehículo— el accidente no hubiera ocurrido.

Pero, *hay más.* El citado testigo Torres Cordero declaró que el "impacto ocurrió con el lado izquierdo del frente del vehículo" que conducía el apelante. Esto es, habiendo *cruzado* el occiso la carretera, *en dirección de derecha a izquierda*, el golpe en el lado *izquierdo* delantero del vehículo *significa* que ya el occiso estaba terminando de cruzar dicha carretera.

Pero, *todavía hay más.* El hecho anteriormente mencionado *no* tiene que ser objeto de inferencia. El acompañante del apelante se encargó de establecerlo. Como surge de la propia Sentencia mayoritaria, el testigo Torres Cordero testificó que el "hombre [el occiso] iba a terminar de cruzar.

Ya iba a treparse a la isleta. Estaba ... a tres (3) pies de la isleta".

*Por otro lado*, tenemos que el apelante *huye* del lugar de los hechos. Reiteradamente hemos resuelto que la " 'huida de un acusado del lugar de los hechos' " constituye evidencia tendente a demostrar responsabilidad. *Pueblo v. Rosaly Soto*, 128 D.P.R. 729, 750 (1991), citando a *Pueblo v. Castro*, 75 D.P.R. 672 (1953). A pesar de que "[l]a prueba sobre huida, por sí sola, no es suficiente para establecer culpa ... su pertinencia en conjunto con el resto de la prueba no puede ser cuestionada. ... *Pueblo v. Delgado Lafuente*, 97 D.P.R. 266 (1969); *Pueblo v. Vega Santos*, 88 D.P.R. 272 (1963)". *Pueblo v. Rosaly Soto*, ante, pág. 750.

*Por último*, debe mantenerse presente que el apelante fue acusado, y convicto, de una infracción al Art. 86 del vigente Código Penal de Puerto Rico, ante. Bajo dicha disposición estatutaria —*a diferencia de una acusación bajo el Art. 87 del referido Código Penal, 33 L.P.R.A. sec. 4006, el cual exige "imprudencia crasa o temeraria"*— "solamente [se] requiere que se haya causado la muerte a un ser humano mediante un acto u omisión negligente", lo cual significa "un dejar de hacer aquello exigido al hombre prudente y razonable en circunstancias similares". *Pueblo v. Ruiz Ramos*, 125 D.P.R. 365, 389 (1990). Somos del criterio que en el presente caso el Estado probó, *cuando menos*, "un dejar de hacer", o un acto negligente, por parte del apelante en los hechos que culminaron en la muerte del peatón.

*En resumen*, nos encontramos ante el siguiente cuadro de hechos: una persona que conduce un vehículo de motor a una *velocidad mayor* de la permitida por ley y que *no le permite mantener el debido control del vehículo* que conduce; que observa a un peatón que va cruzando la carretera a una distancia de ochenta y dos (82) pies del punto desde donde, por primera vez, lo ve; que no puede evitar impactarlo *debido a la velocidad a la que conducía el vehí-*

*culo*; que impactó al peatón, con el lado *izquierdo* delantero del vehículo, *cuando ya éste estaba próximo a salir de la vía de rodaje*; y que teniendo la conciencia culpable, huye del lugar de los hechos.

Nos parece que resulta *obvio* que la sentencia apelada debe ser confirmada. Es por ello que disentimos.